798 A.2d 697

COMMONWEALTH of Pennsylvania, Appellee,

v.

Shawney PERRY, Appellant.

Commonwealth of Pennsylvania, Appellee,

v.

Brett Stewart, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 2000.

Decided June 3, 2002.

Gerald A. Stein, Philadelphia, for appellant.

Catherine Lynn Marshall, Philadelphia, for appellee.

FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice CAPPY.

The issue before the court is whether exigent circumstances excused the Commonwealth's warrantless search of a vehicle, after the occupants had been removed from the vehicle and taken into police custody. I conclude that under the unique facts of this case, there existed a potential threat of deadly harm to the police, and thus, exigent circumstances that justified the Commonwealth's failure to obtain a search warrant.

As resolution of this case is fact-driven, a detailed recitation of the facts is necessary. On Saturday June 8, 1996, at approximately 3:00 a.m., Javon Jones and Bobby Mahalati were driving a GEO Tracker to Illusions, an after-hours club. At the same time, Appellant Perry was driving a white Lexus

and Appellant Stewart was a passenger in the vehicle. Perry had stopped the Lexus at a green light on 7th Street which was around the corner from the club. Perry and Stewart were blocking a lane of traffic while the men conversed with some women who were in the car behind them. Jones, driving the Tracker with the top and windows down, pulled along side the Lexus as the light turned red. Stewart turned to Jones and remarked, "What the f—you looking at?" Jones and Mahalati ignored Stewart. When the light turned green, Jones drove around the Lexus and stopped in front of the entrance to Illusions. Perry pulled the Lexus along the passenger side of the Tracker. Perry asked Mahalati, "What the f—you looking at?" Perry then repeated several times, "What do you want to do? Do you want to f—us?" Mahalati responded, "All right, What ever p——." One or both of the Appellants shouted, "What? Do you want to take care of this" and "We can take care of this around the corner." Perry and Stewart then drove to the end of the block and turned left onto 8th Street.

Perry positioned the Lexus on 8th Street so as to leave only enough room for a single vehicle to pass. Jones and Mahalati drove past the Lexus, passing it on the right. Jones and Mahalati observed that both Perry and Stewart were holding guns. Mahalati threw his seat back in an attempt to protect himself while Jones attempted to speed away. Shots rang out and Mahalati lost feeling in his legs.

Jones drove around the block in an effort to seek help. Jones flagged down Philadelphia Police Officer Tyrone Forrest, who was on duty outside of Illusions. Officer Forrest observed the bullet hole in the side of the Tracker and noted blood on the seat. After summoning an ambulance, Officer Forrest broadcasted an alert over police radio at 2:59 a.m., stating that a man had been shot and that his assailants were two black males who had driven southbound on 8th Street in a two-door white Lexus.

Officer John Barker received the police broadcast. Approximately one minute later, he observed Perry and Stewart in the white Lexus which was proceeding south on 8th Street.

Barker requested back up and followed. Officer Barker and Sergeant Glenn Katz, who had joined in the pursuit, ultimately stopped the men near the intersection of 11th and Federal Streets. The Lexus was blocking one of two southbound lanes of 11th Street.

The officers directed Perry and Stewart out of the car. The officers did not request that Perry turn off the engine, and thus, the motor remained running. The police frisked the men as a safety precaution but no weapons were found on their persons. The police took Jones to the stopped vehicle in an attempt to identify the assailants. Jones arrived within fifteen minutes after Officer Forrest had reported the shooting over the radio.

Upon seeing Perry and Stewart, Jones immediately exclaimed, "that's them and they have two guns." At that point, Perry and Stewart were handcuffed and placed in police vehicles. Jones informed police that at least one of the guns appeared to be an "automatic" weapon. This information was relayed to Lieutenant Thomas McDevitt who had arrived on the scene. Determining that as a matter of public safety it was imperative for the guns to be recovered, Lieutenant McDevitt requested that Officer Barker search the Lexus for the weapons.

Officer Barker returned to the vehicle and shined a flashlight into the passenger compartment. He noticed that the floor mat on the driver's side was askew. Concerned that one of the guns may be lying beneath the mat, Officer Barker lifted the mat and uncovered a 9mm Helwan, loaded with six bullets. Officer Barker then searched under the passenger side floor mat and uncovered a .22 Beretta. Once the weapons were removed, the Lexus was driven to police headquarters. No other search was made of the vehicle, and the vehicle was immediately driven to an impoundment area.

Perry and Stewart were held for trial for attempted murder, aggravated assault, criminal conspiracy, and related charges. On March 9, 1998, a joint suppression motion was filed in which Perry and Stewart claimed that the police had

acted illegally in conducting a warrantless search of the Lexus and in seizing the guns. The court suppressed the weapons seized from the Lexus finding that the police were not permitted to search the vehicle without a search warrant. More specifically, the suppression judge noted that at the time the police entered the Lexus, both Perry and Stewart had been handcuffed and taken into police custody. Thus, no exigent circumstances were present which would justify the warrantless search.

The Commonwealth appealed to the Superior Court, certifying that the suppression of the weapons had substantially handicapped its prosecution of Perry and Stewart.[1] The Superior Court reversed the order of the suppression court. The Superior Court found that exigent circumstances existed with respect to public safety and with respect to police safety that excused the warrantless search of the Lexus. The Superior Court remanded the matter for further proceedings. This court granted allocatur and the cases were consolidated for review.

The issue before the court is whether exigent circumstances excused the warrantless search of the Lexus, thus rendering the search constitutionally reasonable.[2]

As neither Perry nor Stewart contends that the search was violative of the Fourth Amendment to the United States

1. The Commonwealth may appeal a suppression order as a final order "when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps the prosecution." *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985).

2. When reviewing the rulings of a suppression court, this court must determine whether the record supports that court's findings of fact and then determine whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190 (1997). Where the defendant has been successful before the suppression court, the appellate court may consider only the evidence of the witnesses offered by the defendant, as the verdict winner, and only so much of the evidence for the prosecution as read in the context of the record as a whole that remains uncontradicted. Where the record supports the findings of fact, the court are bound by those facts and may reverse only if the court erred in reaching its legal conclusion based upon the facts. *In re D.M.*, 556 Pa. 160, 727 A.2d 556, 557 (1999).

Constitution, the starting point in resolving this issue is the Pennsylvania Constitution. Article I, Section 8 of the Pennsylvania Constitution sets the parameters of governmental searches and seizures of the citizens of our Commonwealth, their homes, and their possessions:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const., art. I, § 8. This court has consistently embraced the principle that Article I, Section 8 of the Pennsylvania Constitution requires that searches by the state be permitted only upon obtaining a warrant issued by the neutral and detached magistrate. Thus, as a general proposition, warrantless searches are unreasonable for constitutional purposes. *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993, 998 (1999).

However, this court has recognized a number of exceptions from this general warrant requirement.[3] Under certain limited circumstances, the failure on the part of police to obtain a warrant prior to a search will be excused and the subsequent search will not be deemed violative of the privacy protections granted by our Constitution. For example, under Pennsylvania law, for a warrantless search of a motor vehicle to be valid, there must be a showing of both probable cause *and* exigent circumstances. *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 900 (1995).[4]

---

**3.** For example, police do not need a warrant where the subject of the search gives his or her consent to be searched. *Commonwealth v. Abdul–Salaam*, 544 Pa. 514, 678 A.2d 342 (1996). Likewise, if a defendant abandons property, retrieval of such objects does not constitute a search or a seizure necessitating a warrant. *Commonwealth v. Hawkins*, 553 Pa. 76, 718 A.2d 265 (1998). Furthermore, police may, as part of a standardized inventory procedure, search a container or items in a defendant's possession without a warrant. *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992).

**4.** While Pennsylvania law requires both a showing of probable cause and exigent circumstances, federal law requires less and does not offer

The parties in this case have focused on this court's opinion in *White.* Each party contends that *White* compels a ruling in their favor. Thus, an in-depth review of that case to determine its impact on this appeal is appropriate.

*White* involved a warrantless search of an automobile for drugs. In *White,* the police were informed that William White and another individual, Henry Bennett, had a large supply of cocaine and that they were expected to make a sale of the drugs on a particular date. Moreover, the police understood that the cocaine was being moved back and forth between White's residence and Bennett's residence. The police obtained a search warrant for Bennett's residence, vehicle, and person and obtained a warrant for the search of White's residence and person. However, the police failed to obtain a warrant for White's vehicle. As fate would have it, White drove his vehicle into the stakeout area and an unidentified man entered White's vehicle. As this was happening, Bennett also drove by and passed White's car a number of times. Bennett then left the area and the police took White and his passenger into custody. Without obtaining a warrant for White's automobile, the police then entered his vehicle and retrieved a bag containing cocaine as well as a marijuana cigarette that was in plain view on the vehicle's console. The suppression court suppressed the evidence. The Superior Court reversed.

On appeal, this court first reiterated the general rule that a warrant is required before the police may engage in the search of an automobile. The court then proceeded to discuss four exceptions to the warrant requirement. Three of the exceptions considered exigent circumstances and the fourth exception addressed a warrantless search for inventory pur-

the same protection under the United States Constitution. *Maryland v. Dyson,* 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)(pursuant to Fourth Amendment, "automobile exception" has no separate exigency requirement; thus, where there is probable cause to search an automobile, a search is not unreasonable for purposes of the Fourth Amendment if based on facts that would justify the issuance of a warrant even if a warrant is not obtained).

poses. In discussing the first exception, the court addressed the timing aspects of vehicular searches.

> [P]olice may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by police; and (3) police have obtained this information in such a way that they could not have secured a warrant for the search, i.e., there are exigent circumstances.

*Commonwealth v. White,* 669 A.2d at 900.

Thus, this type of exigent circumstances exception to the warrant requirement focuses on the potential for loss of contraband and concentrates on the ability of the Commonwealth to have obtained a warrant in advance of the search. In *White,* the court determined that the police had ample information that White's automobile would be involved in criminal activity and that there were no unforeseen circumstances that would justify a warrantless search of the vehicle.

The court also spoke to a second type of exception dealing with an exigency that justifies a search in the absence of a warrant—a search incident to an arrest. The *White* court, citing *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980), explained that a warrantless search may be permissible as a search incident to an arrest. However, the court reaffirmed the extent of such a search and limited the warrantless search of a vehicle incident to an arrest to areas and clothing immediately accessible to the person arrested. *Id.* The purpose of this second type of exception was to prevent the arrestee from securing weapons or destroying contraband. *White,* 669 A.2d at 902, citing *Timko,* 417 A.2d at 622–23. The court found that White was removed from the car and patted down for weapons, then moved a short distance from the car and was placed under police guard. As the contents of the vehicle were not accessible to White, the police could not search White's automobile incident to his arrest.

The *White* court also touched upon a third excuse to the warrant requirement dealing with another type of exigent circumstance. The court recognized the propriety of a warrantless search where there is potential danger to the police or to others, but where the harm does not lie at the direct hand of the defendant. As explained in *White:*

> We do not propose to invalidate warrantless searches of vehicles where the police must search in order to avoid danger to themselves or others, as might occur in the case where police had reason to believe that explosives were present in the vehicle. Emergencies such as this, however, are not part of this case.

*White,* 669 A.2d at 902, n. 5.[5] The court determined that there was nothing in the record to support an exigency such as danger to the police to justify the warrantless search.

Finally, the court addressed an exception to the warrant requirement for searches conducted for inventory purposes. The court, again citing to *Timko,* found that an inventory search is permissible, but only when the police demonstrate that the search was in fact conducted as a search for purposes of the protection of the owner's property which remained in police custody, the protection of police against claims of lost or stolen property, and the protection of police against danger. *Id.* citing *Timko,* 417 A.2d at 623. The *White* court made clear that if the search was conducted as part of a criminal investigation, it could not qualify as an inventory search. In *White,* the court found that the warrantless search in that case was conducted as part of a criminal investigation, and thus, could not be excused as an inventory search.

Although the parties discuss each of these exceptions, it is clear that only the third exception, that dealing with potential danger to the police or public, is truly implicated in this appeal. In the matter *sub judice,* it is uncontested that

---

**5.** This warrant exception regarding police safety finds further support in *Timko* in which this court suggested that a warrantless search would be justified if police were confronted with "explosives or some other item which might in some way endanger the police officers or others. . . ." *Timko,* 417 A.2d at 623.

although the police did not have the opportunity to obtain a warrant prior to stopping Appellants, there was no danger of the automobile leaving with the contents therein. Furthermore, as Perry and Stewart were secured in a police cruiser prior to the time the search of the vehicle was conducted, a search of the vehicle incident to the arrest could not have been lawfully performed. Finally, it is plain that the search was part of a criminal investigation and not conducted as part of the inventorying of property. Thus, it is the potential danger to police or others, as discussed in footnote five of the *White* opinion, that is the proper focus in this appeal.

Turning to this limited exception, the Superior Court in this case gave two bases for finding exigent circumstances, public safety and police safety. As to concern for the public in general, the Superior Court credited the Commonwealth's explanation that unless the guns were located in the car, the police would have to organize an immediate search of the entire route that the defendants had traveled while fleeing through the city in order to recover the weapons. Lieutenant McDevitt testified that police resources were low at that time and obtaining a search warrant at approximately 3:00 a.m. on a Saturday morning would have taken several hours. Lieutenant McDevitt opined that by that time, there could be children on the streets.

Alternatively, the Superior Court noted that Officer Barker testified that he would have searched the Lexus, even absent Lieutenant McDevitt's direction to search the vehicle, out of concern for his safety and the safety of his fellow officers. Specifically, Officer Barker noted that the motor of the Lexus was still running when the men were in custody and that the vehicle was in the middle of one lane of 11th Street. This constituted an unsafe situation. Furthermore, in attempting to drive or to park the vehicle, an officer ran the risk of injury from a concealed weapon. The police believed from Jones' statement that a 9mm "automatic" was allegedly used in the crime. Finally, Lieutenant McDevitt testified that such a weapon could "easily go off on the officer, if he hit a bump or

stepped on it or kicked it by accident with his foot." N.T. 3/10/98 at 261.

The Superior Court found that the Commonwealth had met its burden in demonstrating probable cause [6] and exigent circumstances that excused the requirement of a search warrant. The Superior Court opined that the officers were faced with two equally difficult and dangerous situations, thus, the court found a need for immediate action. Based upon the gravity of the offense and the level of danger as well as the minimal intrusion into defendant's expectation of privacy, the Superior Court concluded that the search was not unreasonable and reversed the suppression of the weapons.

Based upon the unique facts of the case, I too find that exigent circumstances existed to excuse obtaining a warrant to avoid danger to the police. *White* teaches that in an extreme situation in which there is a great potential for deadly harm, exigent circumstances may exist to justify a warrantless search of a vehicle. The contours of this exception should be defined so that when police are faced with a situation that they did not create, which necessitates that they enter an automobile, and they possess specific and articulable facts from which they reasonably believe that there exists a great potential for deadly harm, the police may conduct a limited search of the vehicle to ensure their safety.

Turning to the case *sub judice*, it is of critical import that the Lexus was in the middle of a lane of traffic with its engine running. This required the police to enter the vehicle to remove it from the right of way and to turn off the vehicle's ignition. Moreover, the police possessed the specific knowledge that a shooting had occurred minutes before which resulted in serious injury. An eyewitness to the crime immediately identified the men in custody as the shooters. Furthermore, the witness stated that there were two weapons involved in the crime and that one of the guns was an

6. The parties do not seriously contest that the officers had probable cause to believe that the Lexus contained evidence regarding the shooting. Thus, this appeal turns on the issue of whether exigent circumstances were present which justified the warrantless search.

automatic weapon. Appellants had been frisked and no weapons were discovered on their person, increasing the likelihood that the guns were in the Lexus. The uncontradicted testimony by the police established that the type of weapon alleged to have been used in the crime was fragile and could easily go off if bumped or stepped upon, posing an immediate threat to any officer who attempted to move the vehicle.[7]

Thus, the police were faced with the necessity of entering the vehicle and were armed with specific and articulable facts that established a great potential for deadly harm to the police if the search of the automobile was not conducted. Finally, the police engaged in a search limited only to establishing the integrity of the passenger compartment of the vehicle. Indeed, after the weapons were discovered, no further search of the vehicle was conducted. Faced with all of these unique and extreme circumstances, considered in toto, it was not unreasonable for police to have searched the vehicle without a warrant.[8]

The concurrence authored by Justice Castille takes issue with the analytical approach taken above as it relates to the first exception to the warrant requirement. It does so by attempting to paint this court's majority decision in *White* as dicta, as a misapprehension and erroneous application of law, flawed by mischaracterization and incomplete quotation, and incredibly, as actually being "coterminous" with federal law. However, the reticular argument offered by the concurrence is more daring than convincing. The court's decision in *White* stands as a declaration by our court affording our citizens broader protections under Article I, Section 8 of the Pennsylvania Constitution than under the Fourth Amendment of the

7. I note that this court should not assume or accept that all 9mm automatic weapons are sensitive. However, for purposes of review in this appeal the court must accept the uncontradicted testimony of the Commonwealth. *In re D.M.*, 556 Pa. 160, 727 A.2d 556 (1999).

8. As I would find that the warrantless search was excused due to the exigency of consideration of police safety, it is not necessary to address the Superior Court's alternative holding that public safety created a separate exigency that justified the warrantless search. I express no opinion as to the merits of this alternative theory.

United States Constitution. The court in *White* created a construct to interpret this Commonwealth's Constitution and it is a majority opinion that is binding precedent.[9]

The concurrence by Justice Castille maintains that there is no indication that *White's* approach was different under Article I, Section 8 than under the Fourth Amendment. This is not so. While perhaps not as precise as desired by the concurrence, *White* reveals a significantly different approach. Rather than engage in the mental gymnastics necessary to reach the concurrence's position, a more natural and comfortable reading of *White* is that it was merely an attempt to reconcile Pennsylvania law with certain aspects of federal law, but to nevertheless establish independent state law regarding automobile searches.

After emphasizing the importance of the defendant's state constitutional claims, the *White* majority discussed the exigent

9. The concurrence first claims that the court's discussion in *White* regarding the first type of exigent circumstances is dicta and is not precedent for the proposition that this court follows an Article I, Section 8 approach to automobile searches that is distinct and different from the approach under the Fourth Amendment. In the concurrence's expansive view of dicta as applied to *White*, and carried to its logical conclusion, the only statement in an appellate opinion strictly necessary to the decision of the case is the order of the court. Of course, such a parsimonious interpretation of what is "necessary" to a decision is jurisprudentially unsound. Yet, it is what the concurrence suggests in its ultra-broad view of dicta. Such an interpretation is inconsistent with the established role of supreme courts. Courts frequently construct tests that act as an interpretation of the law.

The case in *White* arose under Article I, Section 8. The "automobile exception" issue was certainly necessary to the disposition of the appeal. Moreover, as the issue was resolved in a manner inconsistent with federal law, it was necessarily distinct from such law. Finally, it is anomalous for the concurrence to suddenly assert that the court's discussion of the automobile exception in *White* is dicta, when in his dissent in *White*, Justice Castille voiced no such concern, but maintained instead that the discussion regarding a search incident to an arrest was dicta. *White*, 669 A.2d at 909; *see also Pennsylvania v Labron*, 518 U.S. 938, 946 n. 5, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(Stevens, J. dissenting). It certainly draws into question what is left of *White* if, as according to the concurrence, the court's discussions regarding the automobile exception and the court's analysis regarding search incident to an arrest are now both labeled and dismissed as dicta. Casual and convenient application of the dicta label to an analysis that is objectionable does not make it so.

circumstances requirement in the context of federal and state law. While the majority cited to the quarter century old decision in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), it did not review, nor even cite to, subsequent cases by the United States Supreme Court that converted the automobile exception into an absolute rule allowing searches in the presence of probable cause. *See, e.g., United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Instead, the majority looked to state cases that support the conclusion that Pennsylvania law is independent of federal law. *See Commonwealth v. Ionata*, 518 Pa. 472, 544 A.2d 917 (1988)(plurality noting that there exists no per se exemption and exigent circumstances are necessary to justify a search). Thus, rather than a misinterpretation and disregard of federal law, it becomes clear that the *White* majority, attempted to reconcile federal and state case law, ultimately setting forth the law under Article I, Section 8, independent of federal law.

This interpretation is bolstered by Justice Castille's dissent in *White* which speaks volumes and would be nothing short of bizarre if *White's* analysis were indeed coterminous with federal law. Specifically, the dissent in *White* urged that the "automobile exception to the warrant requirements of *this Commonwealth* should be a *per se* rule" recognizing an automobile exception regardless of how much time police may have to obtain a warrant. *White*, 669 A.2d at 909 (emphasis supplied). The dissent's *per se* rule would allow warrantless searches of all automobiles for which police have independent probable cause to believe, *inter alia*, that a felony has been committed by the occupants of the vehicle. *White*, 669 A.2d at 909–10. Such a position is coextensive with federal law. It becomes obvious that the dissent in *White* knew that the majority was interpreting state law and that law was different than federal law. If the *White* majority were setting forth an analysis that was "coterminous" with federal law, the dissent would have had no foundation to urge the "adoption" of a *per se* rule. *See Pennsylvania v. Labron*, 518 U.S. 938, 945–46, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(Stevens, J. dissent-

ing). *Accord Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655, 659 n. 6 (2000)(Castille, J.)(recognizing that *Labron* and *White* were a departure from Fourth Amendment "automobile exception" to warrant requirement). *White* stands as a statement by this court as to the warrant requirement for automobile searches under Article I, Section 8 that is independent of federal law.

Any doubt about this fact vanishes when subsequent case law is considered. These cases consistently confirm that *White* sets the standard for analysis under Article I, Section 8, and this paradigm is not coterminous with federal law. *See, e.g., Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87 (1999); *Commonwealth v. Casanova,* 748 A.2d 207, 211 (Pa.Super.2000); *Commonwealth v. Burns,* 700 A.2d 517, 518 (Pa.Super.1997); *Commonwealth v. Gelineau,* 696 A.2d 188, 191 (Pa.Super.1997); *Commonwealth v. Lechner,* 454 Pa.Super. 456, 685 A.2d 1014, 1016 n. 7 (1996); *Commonwealth v. Haskins,* 450 Pa.Super. 540, 677 A.2d 328, 330 (1996).

In fact, this court's post-*White* decision in *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87 (Pa.1999), sharpens the point. First, and absolutely necessary to an understanding of *Luv,* by the time *Luv* was decided, the United States Supreme Court had made eminently clear that the automobile exception under federal law does not have a separate exigency requirement. *Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)(the "automobile exception" has no separate exigency requirement); *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment allows a search without more). As there can be no question that federal law did not require exigent circumstances at the time *Luv* was decided, the *White* standard requiring exigent circumstances, reaffirmed and utilized in *Luv,* can only stand as a statement of our unique state law jurisprudence. The *Luv* majority, quoting the *White* standard and construing prior cases, unambiguously stated that *"[t]he determining factors in all of these cases are the existence of probable cause and the*

*presence of exigent circumstances. One without the other is insufficient to justify a warrantless search of a vehicle."* *Luv,* 735 A.2d at 93 (emphasis supplied). To suggest that the *Luv* court's use of the *White* construct constituted a continued ignorance of federal law in the face of *Dyson* and *Labron,* or worse, a refusal to apply federal law, is simply too strained to be credible. Rather, *Luv* reasonably and properly interpreted the *White* construct as the law under Article I, Section 8.

Further confirming this reading of *White* is the *Luv* court's emphasis on the possibility of the loss of evidence if the vehicle were not searched. Critical to the decision in *Luv,* yet brushed aside by the concurrence, was the fact that the police were faced with the possibility that if the car was not searched without a warrant, the automobile would continue, possibly resulting in the introduction of a substantial amount of drugs into the community. These were the exigent circumstances that justified the warrantless search and clearly were not required under federal law.[10] *Luv,* 735 A.2d at 94. The import of this is undeniable. Thus, this court's case law subsequent to *White* is consistent with the analysis set forth today.

In conclusion, far from being "coterminous" with federal law, *White* sets forth a straightforward approach that maintains the integrity of the warrant requirement and the privacy of our citizens, bowing only to limited exigencies, for example, when officers' lives are at risk.

The order of the Superior Court is affirmed and the matter remanded for further proceedings.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion joined by Justice Newman.

10. This is a critical aspect that distinguishes *Luv* from the case *sub judice* where the defendants were arrested and in police custody prior to the search and there was no possibility that the evidence would be lost prior to obtaining a warrant.

Justice SAYLOR files a concurring opinion.

Justice NIGRO files a dissenting opinion joined by Chief Justice ZAPPALA.

Justice CASTILLE, concurring.

I concur in the result reached in the lead opinion. If an exigency were required to search an automobile where there exists probable cause beyond (1) the inherent exigency presented by the mobility of the vehicle (the traditional exigency that permits a warrantless vehicle search under the Fourth Amendment), and (2) the lack of an opportunity for police to secure a search warrant before probable cause to search the vehicle arose unexpectedly (an additional exigency uniquely required by Pennsylvania caselaw), then I would certainly agree with Mr. Justice Cappy's lead opinion that the danger to police here justified this particular search. However, I write separately because I do not believe that this Court's existing jurisprudence requires, nor do I think that our jurisprudence should require, any exigency beyond the mobility of a vehicle and the unexpected development of probable cause. Accordingly, I respectfully disagree with the analytical approach employed by the lead opinion. I also write separately because I believe our jurisprudence in this important area has lacked precision and I hope that an exploration of that jurisprudence might provide some guidance in future cases involving automobile searches.

I am on record elsewhere as indicating my belief that the parameters of the automobile exception should be the same under Article I, Section 8 of the Pennsylvania Constitution as under the Fourth Amendment. *See Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 95 (1999) (Castille, J., concurring); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 909–10 (1995) (Castille, J., dissenting). Although that remains my considered belief, I do not advocate that co-extensive rule in the case *sub judice.* I recognize that our jurisprudence has taken a different turn in the past decade. Specifically, I accept that, unlike the Pennsylvania automobile exception cases that preceded and accompanied it, *White* contains a holding that was rendered under Article I, Section 8. Since the

case *sub judice* involves no challenge to the propriety of this Court's Article I, Section 8 jurisprudence in this area, I fully recognize the force of *stare decisis*. Yet, recognizing *stare decisis* is only the beginning of the analysis. My disagreement with the lead opinion concerns what in fact is commanded by *stare decisis* in the area of automobile searches. To be more precise, in my view the actual holdings in our previous cases, including *White,* do not command the construct the lead opinion has extrapolated from mere *dicta* in *White.* In addition, I write separately to explain why I believe that *dicta* is unpersuasive and should not become the law.

Since my disagreement with the lead opinion concerns the precedential value of *White,* it is perhaps best to begin with a discussion of *stare decisis.* "The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903 n. 9 (1996), *citing Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 100 A.2d 595 (1953). Like most jurisprudential principles, *stare decisis* is not an absolute:

> The doctrine of *stare decisis* was never intended to be used as a principle to perpetuate erroneous principles of law. While we fully ascribe to Lord Coke's evaluation of the importance of certainty in the law, this end obviously cannot outweigh the necessity of maintaining the purity of the law. The court's function is to interpret legislative enactments and not to promulgate them. Where, as here, by our decisions ..., the Court distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated, we now have no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity.

*Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452, 456 (1975); [1] *see also Ayala v. Philadelphia Bd. of Public Ed.,* 453 Pa. 584, 305

---

1. While *Mayhugh* spoke of legislative enactments, the principle it restates is, of course, no less applicable to constitutional provisions.

A.2d 877, 888 (1973) ("[T]he doctrine of *stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish"). *Accord Allen v. Mellinger,* 567 Pa. 1, 784 A.2d 762, 767 (2001) (overruling *Woods v. Commonwealth, Dep't of Transp.,* 531 Pa. 295, 612 A.2d 970 (1992) because reasoning of that decision "was fundamentally flawed"). The doctrine only applies to issues actually raised, argued and adjudicated, and only where the decision was necessary to the determination of the case. *See* BLACK'S LAW DICTIONARY 1406 (6th ed.1990). "The doctrine is limited to actual determinations in respect to litigated and necessarily decided questions, and is not applicable to *dicta* or *obiter dicta." Id.*

After carefully reviewing this Court's jurisprudence in this area, and giving due respect to *stare decisis,* it is my considered view that this Court's state constitutional precedent is not nearly so hostile to reasonable searches of automobiles as suggested by the lead opinion's approach, which is adopted from language in *White* that is, in my view, both *dicta* and constitutionally suspect. The warrantless search of the vehicle in this case was proper under Article I, Section 8 because probable cause arose unexpectedly, before police had a chance to secure a search warrant. That probable cause arose unexpectedly is all the exigency I would require under Article I, Section 8—since that is all that is required by the actual holdings of this Court's cases explicating the automobile exception, *see, e.g., Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87 (1999); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995); *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991); *Commonwealth v. Baker,* 518 Pa. 145, 541 A.2d 1381 (1988), and since any other rule is unjustifiably hostile to perfectly reasonable police conduct.

The lead opinion's principal focus is upon *White.*[2] The lead opinion extrapolates from *White* a quasi-legislative construct

2. The lead opinion explains its focus upon *White* by stating that *White* is the case the parties "have focused on," each claiming that it compels a favorable ruling. In point of fact, the Commonwealth's primary argu-

governing automobile searches that sets forth various multi-part tests depending upon the type of exigency that is perceived. In so doing, the lead opinion construes exigencies that were not the basis for the holding in *White*, but instead were additional exigencies that the *White* Court merely "spoke to," "touched upon," or "addressed." Op. at 701. *White*, however, is not binding precedent for the proposition that this Court follows an Article I, Section 8 approach to automobile searches that was consciously distinct and different from the approach commanded by the Fourth Amendment, much less commanded by anything unique to the Pennsylvania constitutional experience. By characterizing *White* as such precedent, the lead opinion perpetuates an unfortunate misapprehension of *White* that began with the non-precedential plurality opinion in *Commonwealth v. Labron*, 547 Pa. 344, 690 A.2d 228 (1997) (*Labron II*). Moreover, even if *White's* holding constituted such a forthright, distinct and acknowledged state constitutional precedent, the lead opinion relies upon portions of *White* that were *dicta*.

The lead opinion states that Pennsylvania constitutional law requires "both a showing of probable cause *and* exigent circumstances" to conduct a warrantless search of an automobile, while the Fourth Amendment, of course, has long required only a showing of probable cause. Op. at 700 & n. 4. *See Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The requirement of an exigency beyond the mobility of the vehicle indeed found its way into this Court's jurisprudence concerning the automobile exception to the warrant requirement. *See, e.g., Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381, 1383 (1988); *Commonwealth v. Cockfield*, 431 Pa.

ment is that this case is controlled by *Baker, Rodriguez,* and *Luv. See* Brief for Appellee at 16–18, 20–22. The Commonwealth then argues—correctly as my analysis below will make clear—that the holding in *White* (as opposed to the *dicta* the lead opinion elevates) is consistent with *Baker. See id.* at 18–19.

639, 246 A.2d 381, 384 (1968). However, that jurisprudence never stated that this was a requirement of Article I, Section 8, distinct from the parameters of the Fourth Amendment, and dictated by something unique to the Pennsylvania constitutional experience. To the contrary, the cases reflecting this exigency requirement relied primarily, and often exclusively, upon cases from the U.S. Supreme Court or cases from this Court construing the Fourth Amendment. *See Commonwealth v. Kilgore*, 544 Pa. 439, 677 A.2d 311 (1995) (*Kilgore I*) (Fourth Amendment decision citing Pennsylvania cases, including *Labron I* and Fourth Amendment decision in *Cockfield*, for proposition that exigency beyond mobility of vehicle is required for automobile search); *Commonwealth v. Labron*, 543 Pa. 86, 669 A.2d 917 (1995) (*Labron I*) (citing federal and state cases interchangeably, with no distinction drawn between Fourth Amendment and Article I, Section 8); *White*, 669 A.2d at 899 (quoting extensively from federal law set forth in *Chambers v. Maroney;* no distinction drawn or articulated);[3] *Commonwealth v. Ionata*, 518 Pa. 472, 544 A.2d 917 (1988) (Opinion Announcing Judgment of Court) (relying upon Pennsylvania cases construing Fourth Amendment or Fourth Amendment and Article I, Section 8 coterminously; no distinction drawn); *Baker*, 541 A.2d at 1383 (no distinction drawn). *Accord Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). The most that can be said about this Court's automobile exception jurisprudence as reflected in the contemporaneous decisions in *White, Kilgore I,* and *Labron I* is that the Court treated the Fourth Amendment and Article I, Section 8 as coterminous on the question of whether some exigency must be shown to justify a probable cause—based, warrantless search of an automobile.

This Court's requirement of an exigency beyond the mobility of the vehicle proved to be erroneous as a Fourth Amendment matter. The U.S. Supreme Court made this abundantly

---

**3.** Although the appellant in *White* apparently invoked only Article I, Section 8, the Court's automobile exception analysis nevertheless endorsed and followed the same coterminous approach followed in all of our cases, relying heavily upon Fourth Amendment authority.

clear by summarily reversing *Kilgore I* and *Labron I. See Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).[4] (The Commonwealth· did not seek certiorari in *White.*)

The case which first purported to convert what had been this Court's coterminous approach to the automobile exception into a separate and more exacting state constitutional command under Article I, Section 8 was the very brief Opinion Announcing the Judgment of the Court in *Commonwealth v. Labron,* 547 Pa. 344, 690 A.2d 228 (1997) (*Labron II*) which issued upon remand following the U.S. Supreme Court's reversal. The plurality opinion in *Labron II,* of course, is not binding precedent. *E.g., Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 750 (1998); *see also Interest of O.A.,* 552 Pa. 666, 717 A.2d 490, 496 n. 4 (1998) (Opinion Announcing Judgment of Court by Cappy, J.) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority"). The *Labron II* plurality would have "reaffirm[ed]" the holding in *Labron I* and "explicitly note[d]" that *Labron I* was "in fact" decided upon independent state grounds, *i.e.,* Article I, Section 8. *Labron II,* 690 A.2d at 228. The plurality found independent state constitutional underpinnings in *Labron I* because it had relied upon *White. Id.* According to the plurality, *White:*

> [had] discussed the automobile exception and noted that, "this [C]ourt, when considering the relative importance of privacy as against securing criminal convictions, has struck

4. It is not unusual for a higher court to ultimately disapprove of a line of authority that a lower court has developed in the daily task of construing the higher court's governing precedent. *See, e.g., Sphere Drake Ins. Co. v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510 (2001) (disapproving *Modern Shoppers World–Mt. Airy Corp. v. Philadelphia Gas Works,* 164 Pa.Cmwlth. 257, 643 A.2d 136 (1994) (en banc), *allocatur denied,* 539 Pa. 683, 652 A.2d 1327 (1994)); *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988) (disapproving Superior Court line of authority interpreting landmark sentencing decisions in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), and *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976)).

a different balance than has the United States Supreme Court, and under the Pennsylvania balance, an individual's privacy interests are given greater deference than under federal law."

*Id., quoting Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 902 (1995). It was only "[f]ollowing this citation to *White,*" the plurality stated, that *Labron I* "concluded ... that 'this Commonwealth's jurisprudence of the automobile exception has long required both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search.' " *Labron II,* 690 A.2d at 228, *quoting Commonwealth v. Labron,* 543 Pa. 86, 669 A.2d 917, 924 (1995) (*Labron I*).

The *Labron II* plurality's non-binding characterization of both *Labron I* and *White,* however, was erroneous. First, there is no indication in the opinion in *Labron I* that the constitutional approach followed there ("this Commonwealth's jurisprudence") was any different under the Pennsylvania Constitution than under the Fourth Amendment. *Labron I* **never** cited, quoted, or relied upon the "different [state constitutional] balance" language in the *White* opinion in explicating the automobile exception. Indeed, *Labron I* embraced the same coterminous approach, reliant exclusively upon Fourth Amendment cases for substantive precedent, that all of our cases had employed to that point. Second, in point of fact, *Labron I* **could not** have accurately cited *White* for the proposition attributed to *White* by the *Labron II* plurality opinion, *i.e.,* that this Court "has struck a different balance" under Article I, Section 8 with respect to the automobile exception. The *White* Court never said any such thing.

The "different [state constitutional] balance" discussion in *White,* which was quoted by the *Labron II* plurality, did not involve the **automobile exception** to the warrant requirement, but rather the **search incident to arrest exception.** *See also Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 92 (1999) (opinion by author of *White* recognizing twin holdings). This analysis occurred **after** *White* had already disposed of the automobile exception claim there. In striking its different state constitutional balance on the search incident to arrest

question, the *White* Court rejected the Fourth Amendment holding in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (under Fourth Amendment, police officer may, as contemporaneous incident to arrest of occupant of automobile, search passenger compartment of vehicle) and stated that "there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody. . . ." *White,* 669 A.2d at 902.

In short, although the automobile exception claim in *White* was raised only under Article I, Section 8 and therefore resulted in an Article I, Section 8 holding, nothing in *White* remotely suggested that the Pennsylvania Constitution commanded a fundamentally different **approach** to the automobile exception than is employed under the Fourth Amendment. Indeed, given how explicit the *White* Court was in rejecting *Belton* and setting forth distinct Pennsylvania constitutional doctrine on the search incident to arrest question, the absence of a similar approach in the discussion of the automobile exception ineluctably suggests that the Court simply perceived no such distinction. Instead, *White* decided the automobile exception question by employing the same coterminous, Fourth Amendment—based construct this Court had developed and followed for years, before the reversal in *Pennsylvania v. Labron,* 543 Pa. 86, 669 A.2d 917 (1995) (*Labron I*). Although the lead opinion today is careful not to cite to the flawed *Labron II* plurality, its identical conclusion that *White* deliberately and consciously established a separate and distinct state constitutional construct is no less erroneous. The very language and structure of the *White* decision, as well as the cases which preceded and shaped the analysis in *White,* inform against the lead opinion's characterization of the decision.

The reliance upon *White* in the instant matter is even more dubious because the lead opinion relies upon parts of *White* that were not necessary to the decision. To compound matters, this *dicta* is extremely problematic in its own right. The *White* opinion sets forth what the lead opinion here describes

as the state constitutional test for the "first" exigent circumstances exception to the warrant requirement as follows:

In sum, the general rule is that a search warrant is required before police may conduct any search. As an exception to this rule, police may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and [the] contents of the automobile may never again be located by police; and (3) police have obtained this information in such a way that they could not have secured a warrant for the search, *i.e.,* *there are exigent circumstances.*

669 A.2d at 900 (emphasis in original). It is the "occupants of the automobile are likely to drive away" element of this tripartite formulation that causes the lead opinion to reject application of this exception to the search here and to focus exclusively upon the separate exigency of a potential danger to the police. *See* op. at 702 (since there was no danger of automobile leaving, exigent circumstances did not exist under that theory). But this "occupants ... likely to drive away" language from *White* is not, and should not become, a state constitutional requirement in cases involving automobile searches.

Since the *White* Court's articulation of this "required element" was not even a part of the actual holding of the case, much less essential to the holding, it was *dicta* under any rational approach to precedent. *See Hunsberger v. Bender,* 407 Pa. 185, 180 A.2d 4, 6 (1962) (statement in prior opinion, which clearly was not decisional but merely *dicta,* "is not binding upon us"); *In re Estate of Cassell,* 334 Pa. 381, 6 A.2d 60, 61 (1939) (comments not necessary to decision of case are *dicta* and, therefore, are not binding authority); *Valles v. Albert Einstein Medical Center,* 758 A.2d 1238, 1246 (Pa.Super.2000) (same). The Court in *White* did not even discuss the "occupants ... likely to drive away" requirement in explaining why it disapproved that warrantless search. Instead, the Court disapproved of the search on the ground that police "knew in

advance what automobiles might be involved [in a drug transaction] and could have requested warrants for the search of the automobiles." *White,* 669 A.2d at 901. Accordingly, it was the advance knowledge of the police, and not the likelihood that "unless the car is searched or impounded, the occupants of the automobile are likely to drive away and [the] contents of the automobile may never again be located by police," which defeated the claim of "unforeseen" or exigent circumstances in *White. Id. See also Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 92–93 (1999) (opinion by author of *White* interpreting its holding); *Commonwealth v. Labron,* 543 Pa. 86, 669 A.2d 917, 923–24 (1995) (*Labron I*) (same). In order to make clear just how indisputable this point is, the entirety of *White's* actual automobile exception holding is set forth below:

The present case, with respect to the "automobile exception," is analytically identical to *Ionata.* In both cases the police had ample advance information concerning the fact that a search of an automobile would likely be involved in apprehending the suspect. When that is true, a warrant is required before the automobile may be searched. As the United States Supreme Court stated in *Chambers v. Maroney:*

Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without extra protection for privacy that a warrant affords. *But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable. . . .*

399 U.S. at 51, 90 S.Ct. at 1980–81, 26 L.Ed.2d at 428. (Emphasis added.) In other words, although the Fourth Amendment generally requires probable cause to be determined and a warrant to be issued by a magistrate before a search may be conducted, unforeseen circumstances involving the search of an automobile coupled with the presence of probable cause, may excuse the requirement for a search warrant. In *Ionata* and in this case, there were no unfore-

seen circumstances. Police knew in advance what automobiles might be involved and could have requested warrants for the search of the automobiles, just as they did for persons and dwellings. Superior Court was in error, therefore in determining that the search was permissible under the "automobile exception" and that exigent circumstances existed to justify the search.

669 A.2d at 900–01 (footnote omitted). Thus, irrespective of what *White* said in *dicta*, the actual automobile exception decision and holding followed from the fact that probable cause did not arise unexpectedly. In this regard, the holding was perfectly consistent with previous cases such as *Baker* and *Ionata*, and reflected this Court's understanding (which ultimately proved mistaken) of the Fourth Amendment automobile exception. In addition to revealing the very narrow holding in *White*, the passage above is also significant because it cites to cases from the U.S. Supreme Court and adverts to the Fourth Amendment without a hint of disapproval or disagreement. The passage thus demonstrates just how dependent the holding in *White* was upon the Court's ongoing perception of Fourth Amendment law, and how obvious it is that there was no separate and distinct state constitutional analysis at work.

The lead opinion dismisses this reading of *White* as representing a "[c]asual and convenient application of the *dicta* label." Op. at 704, n. 9. This is not so. The lead opinion's interpretation does not draw any distinction between mere "discussions" in opinions and constitutional "holdings." It is steadfast in this regard even when the "discussion" is distressingly problematical. Virtually the entirety of the lead opinion's criticism of this concurrence, including its mischaracterization of the dissent in *White*, *id.* at 14, derives from its rejection of such a distinction. This concurrence does not employ *dicta* as a mere "label" but as an accurate description of the non-essential and erroneous discussion in *White*. The fact of the matter is that the automobile exception **holding** in *White*, which I have been careful to quote above so that it not be misunderstood, does not involve an application of the

"discussion" the lead opinion would promulgate as settled and binding state constitutional doctrine.[5]

The lead opinion's reliance upon the *White dicta* is problematic for a further reason. Far from establishing a separate state constitutional search and seizure construct, the *White dicta* setting forth the lead opinion's so-called "first" exigent circumstances exception, like the *White* holding, was "summarizing" the *White* Court's understanding of Fourth Amendment law. *White*, 669 A.2d at 900. Specifically, in setting forth this would—be exception, the *White* Court stated that it was merely summarizing an immediately preceding quotation from *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), which in turn characterized the U.S. Supreme Court's decision in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It is from *Chambers* characterization of *Carroll* that the *White* Court extrapolated from Fourth Amendment authority the would—be required element of: "unless the car is searched or impounded, the occupants of the automobile are likely to drive away and [the] contents of the automobile may never again be located by police." *White*, 669 A.2d at 900.

More importantly, *White's* characterization of *Chambers/Carroll* was mistaken. The *White* characterization overlooked the very next paragraph in the *Chambers* opinion, which reads as follows:

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only

5. My dissenting opinion in *White* responded to the *White* majority's actual holding on the question of the automobile exception—a holding that never even purported to be promulgating a view of Article I, Section 8 that was different and distinct from the Fourth Amendment. The *White* dissent then argued for a rule that would not require even the added exigency of probable cause arising unexpectedly which had crept largely unnoticed (or certainly unacknowledged) into this Court's automobile exception cases such as *Baker* and *Rodriguez*. That rule, of course, is the rule that the U.S. Supreme Court subsequently applied when it reversed *Kilgore I* and *Labron I*. The issue is entirely different in this case because the lead opinion now seeks to promulgate the suspect *White dicta* as state constitutional doctrine, and its decision in this regard is essential to its analysis.

the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. *For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.*

399 U.S. at 51–52, 90 S.Ct. 1975 (emphasis added). Thus, to the extent the *White dicta* embraced by the lead opinion would require the "occupants ... likely to drive away" element, it was an erroneous characterization of the very Fourth Amendment authority it was "summarizing." We should acknowledge the mistake, not perpetuate it.

Furthermore, *White's* misapprehension of federal law in this regard stands in contrast to this Court's prior decisions in *Baker* and *Milyak*. In both of those cases, this Court recognized *Chambers* instruction that an alternative to an immediate car search is to immobilize the vehicle until a warrant is secured but that, since immobilization is not necessarily less intrusive than an immediate search, an immediate search, rather than immobilization, is constitutionally proper. *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381, 1383–84 (1988); *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346, 1349 (1985). I simply cannot join the lead opinion in converting a mistaken summary of Fourth Amendment law in the *White dicta* into a "binding," novel state constitutional search and seizure construct. Pennsylvania constitutional jurisprudence should be made of sterner stuff.[6]

6. I also would not adopt the erroneous *dicta* in *White* because this radical, novel construct was not arrived at through an actual state constitutional analysis. In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), this Court stated that it is "essential" that a court undertaking an independent analysis of Article I, Section 8 consider "at least" four specific areas: the text of the Pennsylvania constitutional provision; the history of the provision, including Pennsylvania case law; related case law from other states; and policy considerations unique to Pennsylvania. *Id.* at 895. The construct set forth in the

The lead opinion suggests that this concurrence is contrary to a "declaration by our court [in *White*] affording our citizens broader protections under Article I, Section 8 of the Pennsylvania Constitution than under the Fourth Amendment of the United States Constitution." The lead opinion asserts that this "declaration" is "binding precedent." Op. at 703–04. In point of fact, as demonstrated above, *White* contains no such declaration with respect to the automobile exception. Moreover, the fact that this Court has held that Article I, Section 8 affords broader protections than the Fourth Amendment in some contexts does not mean that it automatically requires different and greater protections in all contexts. As this Court noted in *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 660 (2000):

> the fact that this Court has "accorded greater protections to the citizens of this state under Article I, § 8 of our constitution under certain circumstances," [*Commonwealth v.*] *Cleckley*, ... 738 A.2d [427,] 431 [ (Pa.1999) ], does not command a reflexive finding in favor of any new right or interpretation asserted. To the contrary, we should apply the prevailing standard "where our own independent state analysis does not suggest a distinct standard." *Id.*, 738 A.2d at 431–32 (collecting cases); *Commonwealth v. Edmunds*, ... 586 A.2d 887, 894 ( [Pa.] 1991).

*Accord In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001) (refusing to afford broader protection under Article I, Section 8 in context of "*Terry*" stops). Thus, the fact that the *White* Court explicitly found greater protections under the Pennsylvania Constitution in the context of a search incident to arrest does not mean that it automatically made the same finding, *sub silentio*, with respect to the automobile exception. Indeed, the presumption is to the contrary and that presumption is fully borne out by the other circumstances attending the

*White dicta* was not supported by an *Edmunds* analysis, nor by any concerns that could be deemed unique to Pennsylvania constitutional jurisprudence. Quite to the contrary, the source for the *White dicta* was an incomplete quotation from *Chambers*, a Fourth Amendment case from the U.S. Supreme Court, which changed the central message of the quotation.

*White* opinion, *i.e.,* the fact that the Court articulated no distinction between the state and federal charters in the context of the automobile exception, the fact that it cited and quoted Fourth Amendment cases, and the fact that it did not purport to establish **distinct** state constitutional doctrine.

More fundamentally, *White* only "binds" this Court with respect to propositions which were actually at issue, and actually decided, in the case. Broad but non-essential "declarations" are not precedent; ultimately, their inherent wisdom and persuasiveness determine whether they will play any role in future decisions. *See Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177, 1182 (1992) (Flaherty, J., joined by Zappala and Cappy, JJ., dissenting) (although *dicta* may be instructive in predicting direction of court, it is not precedential authority). *Dicta* is not converted into binding constitutional precedent through repetition. *Cf. Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion).

Notwithstanding the inescapable constitutional and jurisprudential difficulties inherent in the approach in the *White dicta,* the lead opinion proffers what it calls a "comfortable" reading of *White* that would accord its *dicta* constitutional status as a "construct" "created ... to interpret" Article I, Section 8, which did not misinterpret or disregard federal law, but instead "merely ... attempt[ed] to reconcile Pennsylvania law with certain aspects of federal law, but to nevertheless establish independent state law regarding automobile searches." Op. at 704. This view might be plausible if there were some indication in the *White* opinion that the Court there perceived a difference between federal and state law with respect to the automobile exception and applied the distinction to resolve the matter. But there is no such indication—at all. Viewing *White* in this fashion requires the doctor to kill the patient to save him.

More importantly, such a revisionist interpretation of *White* as an explicit and harmonious expression of Pennsylvania constitutional principle, consciously offered up as a different approach to what then prevailed under the Fourth Amendment, is implausible in the extreme in light of this Court's

decisions in *Kilgore I* and *Labron I. White* was decided on the very same day as *Labron I, i.e.,* December 29, 1995. *Labron I* discussed *White* at great length, quoted from it, and explicitly applied it. *Kilgore I* was decided three days earlier, on December 26, 1995, although it appears much later in the Atlantic Second Reporter (volume 677, as opposed to volume 669), and it makes reference to, and quotes from, the subsequently—decided *Labron I.* After *Kilgore I* and *Labron I* were reversed and remanded by the U.S. Supreme Court, this Court, in separate plurality opinions, "reaffirmed" *Labron I* on state constitutional grounds, *Labron II,* 690 A.2d at 228, but vacated the prior order in *Kilgore I* because no state constitutional claim was at issue there. *Commonwealth v. Kilgore,* 547 Pa. 346, 690 A.2d 229, 230 (1997) (*Kilgore II*) (Opinion Announcing Judgment of Court).

Thus, these three contemporaneous decisions covered the spectrum of available automobile exception constitutional challenges: *White* sounded under the Pennsylvania Constitution alone; *Kilgore* involved a federal constitutional claim only; and *Labron* was a case where the claim apparently was raised under both charters. What is notable for present purposes is that there is **no** suggestion in the inter-related 1995 decisions themselves that the constitutional approach **differed** depending upon whether the claim was state—only, federal—only, or mixed. The notion that this Court in *White* was forging some conscious, harmonious, state constitutional path which was distinct from federal law simply does not withstand scrutiny in light of its companion cases.

Significantly, the U.S. Supreme Court, which had occasion to review this Court's automobile exception jurisprudence immediately after the three cases were decided, certainly did not share the lead opinion's interpretation of *White's* approach as a "reconciliation" of a recognized divergence in state and federal law. In its per curiam decision reversing *Kilgore I* and *Labron I,* the high Court addressed an argument, made by Labron, that this Court's opinions were decided on adequate and independent state grounds—*i.e.,* Article I, Section

8. The Court rejected that claim with the following observations, which include a recognition of *White:*

> Respondent Labron claims we have no jurisdiction to review the judgment in his case because the Pennsylvania Supreme Court's opinion rests on an adequate and independent state ground, viz., "this Commonwealth's jurisprudence of the automobile exception." *[Labron I,]* ... 669 A.2d, at 924. We disagree. The language we have quoted is not a "plain statement" sufficient to tell us "the federal cases [were] being used only for the purpose of guidance, and did not themselves compel the result that the court ha[d] reached." *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 ... (1983). The Pennsylvania Supreme Court did discuss several of its own decisions; as it noted, however, some of those cases relied on an analysis of our cases on the automobile exception, *see, e.g., [Labron I,]* ... 669 A.2d, at 921 (observing *Commonwealth v. Holzer,* ... 480 Pa. 93, 389 A.2d 101, 106 ( [Pa.] 1978), cited *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 ... (1971)); *[Labron I,]* ... 669 A.2d, at 924 (stating *Commonwealth v. White, supra,* rested in part upon the Pennsylvania Supreme Court's analysis of *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 ... (1970)). The law of the Commonwealth thus appears to us "interwoven with the federal law, and ... the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Michigan v. Long,* 463 U.S., at 1040 1041, 103 S.Ct. 3469.... Our jurisdiction in Labron's case is secure. *Ibid.* The opinion in respondent Kilgore's case, meanwhile, rests on an explicit conclusion that the officers' conduct violated the Fourth Amendment; we have jurisdiction to review this judgment as well.

518 U.S. at 940–41, 116 S.Ct. 2485.

Apparently, then, I am not alone in the view that "this Commonwealth's jurisprudence of the automobile exception" at the time *White, Labron,* and *Kilgore* were decided—jurisprudence which held that an exigency beyond the mobility of a vehicle must be present to excuse the warrant requirement—

was not independently based in distinct state constitutional principles. No doubt the lead opinion would deem the U.S. Supreme Court's view of our jurisprudence, including *White*, as no less "incredible" than my own. I respectfully submit, however, that it does not require "reticular argument" or "mental gymnastics," op. at 703, 704, to see the patent, severe flaws in the *White dicta*, and the lack of any foundation in state constitutional principle. It merely requires judicial rigor: *i.e.*, a willingness to confront openly the fatal flaws in the "authority" at issue.

The *dicta* in *White* upon which the lead opinion relies is multiply and fundamentally flawed. In addition to being unmoored in Pennsylvania or federal precedent, it is also unworkable. The multiple potential exigent circumstances, each with multiple governing "tests," outlined in *White* is impractical in the extreme. Police on the street, which is where all of these searches occur, cannot hope to correctly anticipate how a court might later split these new—grown hairs. If it were precedent having *stare decisis* effect, it would warrant overruling or, at a minimum, reconsideration. *See Allen v. Mellinger*, 567 Pa. 1, 784 A.2d 762 (2001) (overruling case because reasoning "was fundamentally flawed"). But, since it is not binding precedent, there is no principled reason whatsoever to adopt it.

Rather than attempt to squeeze this case into the analytical construct set forth in the *White dicta*, I would proceed to decide it in light of our actual experience with the automobile exception. For purposes of disposing of this appeal, I shall assume that, if this Court ever actually examined the issue as a state constitutional matter, a majority of Justices would hold that the exigency requirement that characterized our coextensive Fourth Amendment/Article I, Section 8 automobile exception jurisprudence until the reversal in *Pennsylvania v. Labron*, 543 Pa. 86, 669 A.2d 917 (1995) (*Labron I*), should be embraced as a state constitutional command. Consideration of the cases we have decided under that construct confirms that the search here was reasonable.

This Court has approved warrantless vehicle searches so long as: (1) police had probable cause, and (2) the probable cause arose unexpectedly, *i.e.*, in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose. There was never any separate and additional requirement that the vehicle was unlikely ever to be found again for the exigency to exist. The actual holding in *White* obviously fits this construct—as do numerous cases decided before or contemporaneously with *White*.

For example, in *Baker*, the police received a tip from a reliable informant that the defendant had waved a gun at an unknown individual in an alley. The informant stated that the defendant was driving an old, dilapidated red convertible with the top down. Police soon located the car with the defendant in it and set up surveillance. After approximately twenty to thirty minutes, the police approached, the defendant exited the car and, subsequently, the police searched the vehicle. In a unanimous opinion, this Court upheld the warrantless vehicle search, reasoning as follows:

> [C]ertain exigencies may render the obtaining of a warrant not reasonably practicable under the circumstances of a given case, and, when that occurs, vehicle searches conducted without warrants have been deemed proper where probable cause was present. . . . This is not a case where police knew hours in advance that a particular vehicle carrying evidence of crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched. Rather the instant search was conducted when police stopped a moving vehicle just thirty minutes after a reported crime. *Inasmuch as the requirement of probable cause was satisfied, the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search proper.*

*Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381, 1383 (1988) (emphasis supplied).

*Baker* was recently cited approvingly in *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 93 (1999) (applying *Baker's* two-fold "determining factors" of "the existence of probable cause and the presence of exigent circumstances" and noting that the exigency in *Baker* involved fact that "police did not know well in advance where the criminal evidence would be located and could not have reasonably obtained a search warrant"). In *Luv*, this Court found that exigent circumstances existed because, *inter alia*, "[t]here was no time to secure a ... warrant" once probable cause unexpectedly arose to search his car. *Id.* at 94.[7]

Moreover, *Baker's* approach has been embraced in numerous other cases decided by this Court. In those cases, whether the police had previous information that a particular vehicle would be involved in the commission of a crime has been the decisive factor in determining whether exigent circumstances justified a warrantless automobile search. *See Commonwealth v. Labron*, 543 Pa. 86, 669 A.2d 917 (1995) (*Labron I*) (no exigent circumstances where, prior to arranging surveillance of defendant, officer had specific information that defendant used his Lincoln automobile to transport drugs); *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991) (exigent circumstances exist where police did not have ad-

7. The lead opinion relies upon *Luv* as corroboration of its view that *White* deliberately set forth a distinct Pennsylvania constitutional test governing automobile exception cases. The decision in *Luv* never mentions Article I, Section 8 or the Fourth Amendment. Moreover, although the decision indeed cites and follows *White*, it also cites and follows *Baker*—which pre-dated the alleged state constitutional "declaration" in *White* and was not decided under Article I, Section 8— without ever suggesting that different tests were at issue in the two cases. The most that can be said about *Luv* is that the basis for the decision is unclear; it certainly adds little to the validity of the *dicta* in *White*. The lead opinion also deems *Luv* significant because police in that case were faced with a circumstance where, if they did not immediately stop and search the vehicle, Luv would have continued on his way, which may have resulted in the disappearance of the evidence. *Luv*, 735 A.2d at 94. This certainly was an exigent fact that was present and considered in *Luv*, but the presence of that fact hardly stands as a pronouncement that the Pennsylvania Constitution **requires** the existence of that particular fact for an exigency to be deemed present. The state constitutional silence in *Luv*, in short, does nothing to resurrect the *dicta* in *White*.

vance notice that defendant and her husband would be traveling in York County in particular automobile); *Commonwealth v. Ionata,* 518 Pa. 472, 544 A.2d 917 (1988) (plurality) (no exigent circumstances where police had four hours' advance notice that defendant would be transporting drugs in particular automobile and had obtained search warrant for defendant's person and premises).[8]

In the case *sub judice,* there unquestionably was probable cause to search the white Lexus for the firearms that appellants had fired from that very car at the victims only a short time before. The probable cause arose on the street, in the middle of the night, unexpectedly, and only after a shooting, about which police could not, and did not, have prior knowledge. Since the police had probable cause, and there was no prior opportunity to secure a warrant, the warrantless search here plainly was justified by exigent circumstances and was proper under our prior case law. Under the doctrine of *stare decisis,* that is enough to decide this case.

I realize that there is some discomfort in confronting and acknowledging flaws in prior cases, even when the mistake may be inadvertent and occurred in mere *dicta.* But a reasoned and responsible jurisprudence cannot simply turn a blind eye to the mistake. *See The Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 787 A.2d 376, 391 (2001) (Zappala, J., joined by Castille, J., dissenting) (discussing *Gray v. Nationwide Mutual Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966)). *Cf. Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion). It may be that if this Court were to be presented with a case squarely raising the material question of whether police immobilization of the automobile driver renders the exigency recognized in *Baker* and *White* inapplicable under Article I, Section 8, it would conclude that a

8. The basis for the preference in our prior cases that there has been no previous opportunity to obtain a warrant is understandable: *i.e.,* it guards against pretextual automobile stops. But I see **no** value, constitutional or otherwise, that is served by an *ad hoc* requirement that there also be a showing that "unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by police."

view approximating that which was set forth and rejected in *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), is commanded by the unique Pennsylvania experience. We should not, however, announce that this has already happened, when it most demonstrably has not.

The super-exigent circumstances construct that the lead opinion poses as settled state constitutional law is taken from fundamentally flawed *dicta* in a case that construed Fourth Amendment law, *dicta* which did not purport to be discovering and announcing some distinct requirement of Article I, Section 8. Although I concur in the ultimate judgment, for the reasons I have set forth above, I respectfully disagree with the lead opinion's analytical approach.

Justice NEWMAN joins this concurring opinion.

Justice SAYLOR, concurring.

I agree with Mr. Justice Castille that the scope of protection afforded by Article I, Section 8 of the Pennsylvania Constitution in the arena of automobile searches is a matter less settled than the majority opinion portrays.[1] This Court's jurisprudence has nevertheless required both probable cause and exigent circumstances to justify a warrantless search, *see Commonwealth v. Luv,* 557 Pa. 570, 581, 735 A.2d 87, 93 (1999), and, at least in broad overview, it would not appear to have been the Court's intent to dilute the exigent circumstances requirement by defining it solely in terms related to the development of probable cause.[2]

It is preferable, in my view, to consider the term exigent circumstances as "purposely imprecise," *State v. Cooke,* 163 N.J. 657, 751 A.2d 92, 102 (2000), as it is informed by the individualized facts of the case. *See id.* Additionally, it is

1. I believe that a portion of the uncertainty embodied in this Court's prior decisional law is due to fundamental changes in Fourth Amendment jurisprudence effectuated by the United States Supreme Court. *See infra* note 3.

2. Certainly, as reflected in Justice Castille's concurring opinion, the Court has employed language in some instances that would support his considered view in this regard.

important to recognize that the exigency required to support a warrantless search varies according to the privacy expectation connected with the place to be searched. *See generally* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.2(a), at 458, § 7.2(b), at 481 (3d ed.1996). Accordingly, courts have described the exigencies required to support a vehicle search in terms less demanding than those necessary to support a search of a home, based upon the lesser expectation of privacy associated with the former. *Accord Commonwealth v. Labron,* 543 Pa. 86, 95, 669 A.2d 917, 921 (1995) (recognizing as a matter of state constitutional jurisprudence that "one's expectation of privacy with respect to an automobile is *significantly less* than that relating to one's home or office" (emphasis in original; citation omitted)), *rev'd,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (*per curiam*), *on remand,* 547 Pa. 344, 690 A.2d 228 (1997) (plurality opinion) (reaffirming on independent state grounds). *See generally* LAFAVE, SEARCH AND SEIZURE § 7.2(a), at 458, § 7.2(b), at 481. Specifically, this Court has indicated, in the automobile paradigm, that sufficient exigency is present where, because of the attending circumstances, it was not reasonably practicable for the police to obtain a warrant. *See Commonwealth v. Baker,* 518 Pa. 145, 148, 541 A.2d 1381, 1383 (1988); *Commonwealth v. Ionata,* 518 Pa. 472, 478, 544 A.2d 917, 920 (1988) (opinion in support of affirmance).[3]

3. Notably, this standard parallels the language employed by the United States Supreme Court in the formative stages of the automobile exception. *See Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925) (stating that "in cases where the securing of a warrant is reasonably practicable, it must be used ..."). As the majority opinion indicates, the United States Supreme Court eventually broadened the exception by eliminating the exigency requirement, *see California v. Carney,* 471 U.S. 386, 393, 105 S.Ct. 2066, 2069–70, 85 L.Ed.2d 406 (1985), while this Court has adhered to the original formulation. It is also noteworthy that in those jurisdictions departing from the more recent construct of the motor vehicle exception under the Fourth Amendment, the required exigency has been couched in terms similar to those articulated in *Carroll. See, e.g., State v. Elison,* 302 Mont. 228, 14 P.3d 456, 468 (2000) (explaining exigent circumstances as meaning that "it was not practicable under the circumstances to obtain a warrant"); *Cooke,* 751 A.2d at 102 (stating that

Here, the police did not receive information concerning the shooting sufficiently in advance to secure a warrant, the vehicle was situated in the middle of the street and running, and given the concern for locating loaded firearms before moving the vehicle or ordering a search of the surrounding area, it was not reasonably practicable to obtain a warrant. More important, the scope of the search was limited to the exigency justifying its instigation, namely, the seizure of the loaded firearms. *See generally Commonwealth v. Zhahir*, 561 Pa. 545, 558, 751 A.2d 1153, 1160 (2000) (explaining that "a warrantless search is circumscribed by the exigency justifying its initiation"). I therefore agree that the warrantless search was justified.

Justice NIGRO, dissenting.

I disagree with the conclusion of the Opinion Announcing the Judgment of the Court ("Opinion Announcing the Judgment") that exigent circumstances excused the Commonwealth's warrantless search of the car in the instant case. Here, despite the fact that Appellants had already been removed from the car and taken into police custody before the search occurred, the lead opinion nonetheless finds that the circumstances surrounding the arrest of Appellants created such an exigency as to justify an immediate warrantless search of the car. I cannot agree and therefore, respectfully dissent.

I believe that the interpretation of Article I, Section 8 of the Pennsylvania Constitution that the lead opinion proffers today differs from the settled jurisprudence of this Commonwealth. Article I, Section 8 generally prohibits the police from searching a person or his property and seizing personal property without a search warrant. *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993, 998 (1999). "A search warrant indicates that the police have convinced a neutral magistrate upon a showing of probable cause, which is a reasonable belief, based on the surrounding facts and the totality of the circumstances,

"exigency in the constitutional context amounts to circumstances that make it impracticable to obtain a warrant").

that an illegal activity is occurring or evidence of a crime is present." *Id.* at 998–99 (citing *Commonwealth v. Jones*, 542 Pa. 418, 668 A.2d 114, 116–17 (1995)). A search without a warrant may be proper where the police have probable cause to believe that a crime had been or is being committed *and* an exception to the warrant requirement applies. *See Commonwealth v. Riedel*, 539 Pa. 172, 651 A.2d 135, 139 (1994)(warrant exceptions include actual consent, implied consent, search incident to arrest, and exigent circumstances).

Under federal law, a search of a vehicle is not unreasonable if it is based on probable cause, even though a warrant has not been actually obtained. *See Maryland v. Dyson*, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The federal automobile exception to the warrant requirement is based upon the premise that there is a diminished expectation of privacy in a vehicle and its contents. WAYNE R. LAFAVE, 3 SEARCH AND SEIZURE, § 7.2(a) at 458, § 7.2(b) at 481 (3d ed.1996). However, Article I, Section 8 of the Pennsylvania Constitution has an identity and vitality that is separate and distinct from that of the Fourth Amendment to the United States Constitution, and the decisions of the United States Supreme Court are not dispositive of questions regarding the rights guaranteed to citizens of this Commonwealth under the state constitution. *See Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308, 314 (1992). When considering the relative importance of privacy as against securing criminal convictions, this Court has struck a different balance than has the United States Supreme Court. *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251, 257 n. 3 (1993). Under this Commonwealth's balance, an individual's privacy interests are given greater deference than under federal law. *Id.*

Accordingly, the jurisprudence of this Commonwealth requires both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search of a vehicle. *See Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 93 (Pa.1999); *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 900–02 (1995); *Commonwealth v. Gelineau*, 696 A.2d 188, 191 (Pa.Super.1997). "One without the other is insufficient to

justify a warrantless search." *Luv*, 735 A.2d at 93. Exigent circumstances exist where the police have obtained the information supplying them with probable cause "in such a way that they could not have secured a warrant for the search." *White*, 669 A.2d at 900. *See* BLACK'S LAW DICTIONARY 574 (6th ed.1990)(exigent circumstances refers to those situations in which the police will be unable to effectuate a search for which probable cause exists unless they act swiftly and without seeking prior judicial approval).

In concluding that exigent circumstances excused the warrantless search of Appellants' car in the instant case, the Opinion Announcing the Judgment relies upon a footnote in this Court's decision in *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995), to create what amounts to an overarching warrant exception based on potential danger to the police. In *White*, this Court stated that "a police officer may search an arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence," but absent exigent circumstances, "the arrestee's privacy interests remain intact as against a warrantless search." *Id.* at 902. In a footnote to the discussion rejecting the Commonwealth's argument that the defendant's vehicle was permissibly searched incident to his arrest, the Court in *White* stated:

> We do not propose to invalidate warrantless searches of vehicles where the police *must search* in order to avoid danger to themselves or others, *as might occur* in the case where police had reason to believe that explosives were present in the vehicle. Emergencies such as this, however, are not part of this case.

*Id.* at 902 n. 5 (emphasis added). In contrast to the Opinion Announcing the Judgment, I do not believe that this single footnote in *White* supplies the basis for a separate and distinct exception to the warrant requirement. Instead, in my view, this footnote merely recognizes that danger to police or others *might*, under certain circumstances, create a situation in which the police will be unable to effectuate a search for which

probable cause exists unless they act immediately and without seeking prior judicial approval.

It is clear to me, however, that such a situation simply did not exist in the instant case. Here, at the time of the search, Appellants were already in custody and the car was already under the control of the police. Given these circumstances, the police clearly could have secured the scene and waited with the car while a search warrant was obtained.[1] There was simply no danger to the police that required them to act immediately to search Appellants' car without a warrant.

In concluding otherwise, the Opinion Announcing the Judgment states that it was critical that the car was in the middle of a lane of traffic with its engine running. According to the lead opinion, the police were "required" to remove the car from the right of way and to turn off the car's engine. I disagree. First, the record reveals that the car was stopped on a four-lane road, with two lanes running in each direction plus angle parking on both sides of the street. N.T., 3/10/98, at 265. The car was stopped in the right hand lane of southbound traffic, leaving three lanes open to traffic. N.T., 3/10/98, at 204–06, 265. Clearly, the car was not totally obstructing traffic, especially in the early morning hours on a Sunday.[2] Second, the police did not need to enter the car in

1. Appellants do not contest that the police had probable cause to believe that the car contained evidence regarding the shooting. Thus, it appears that the police would have been able to legally secure the evidence they sought if they had simply followed the warrant requirement. However, as even the police acknowledge, they did not even attempt to secure a warrant before searching the car. N.T., 3/10/98, at 234–36, 263–64. In fact, Lieutenant McDevitt testified that he never even *considered* obtaining a warrant. N.T., 3/10/98, at 264. As the trial court noted at the suppression hearing, there are magistrates and emergency judges on duty twenty-four hours a day for the express purpose of issuing warrants. N.T., 3/11/98, at 333. Thus, securing the car and waiting while a neutral magistrate considered a request for a search warrant was a reasonable, and constitutional, alternative to an immediate warrantless search of the car.

2. Moreover, one would think that proper police procedure would mandate leaving the arrest scene as undisturbed as possible in order to properly collect evidence. The preservation of evidence would seem to be particularly important in a case such as this, where Appellants were alleged to have discharged their weapons from inside of the car.

order to turn off the ignition and remove the keys. According to police testimony, the car doors were left open when Appellants were removed from the car and taken into custody. N.T., 3/10/98, at 273. If there was any danger created by the car running while parked in the road, an officer could have easily reached into the car and turned the ignition off and removed the keys. Thus, I cannot accept the lead opinion's assumption that it was necessary for the police to immediately move Appellants' car, and therefore enter and search the car, prior to obtaining a warrant.

I also disagree with the lead opinion's conclusion that the possible presence of a weapon in Appellants' car posed a threat to any officer who attempted to move the car. In my view, the reasoning of the Opinion Announcing the Judgment is faulty for two reasons. First, the only basis for the leading opinion's conclusion that the police were in danger was the bald assertion by Lieutenant McDevitt that one of the weapons alleged to have been used in the shooting, a 9mm automatic handgun, was fragile and could easily go off if bumped or stepped on. N.T., 3/10/98, at 257, 261. Lieutenant McDevitt was not qualified as a firearms expert and there was absolutely no evidence to support his assertion that the gun could somehow discharge on its own. Second, police officers may not create exigent circumstances, which they then use as justification for failing to follow the warrant requirement. *See Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 230 (1996). In the instant case, there was no evidence of an emergency that required the police to move the car before procuring a search warrant. Thus, by moving the car immediately, the police created a perceived exigency that they used as justification for failing to obtain a warrant. Furthermore, the police created exigent circumstances by claiming that a gun, which could *possibly* be in the car, *might* go off *all by itself.* Thus, in my view, the leading opinion's unfounded reliance on danger to the police does not justify the warrantless search of Appellants' car.[3]

3. In *Commonwealth v. Gelineau,* 696 A.2d 188 (Pa.Super.1997), the Superior Court rejected arguments similar to the ones adopted by the

The Opinion Announcing the Judgment further justifies the warrantless search by explaining that the police engaged in a search limited solely to establishing the safety of the passenger compartment of Appellants' car. According to the testimony of the police, two police officers simultaneously searched the floor on both the driver and passenger sides of the vehicle after observing that the driver's side floor mat was "askew." N.T., 3/10/98, at 212–13. However, if the safety of the officer moving the car was a basis for exigent circumstances, I fail to see why the passenger side of the vehicle was part of this exigency. Under the lead opinion's reasoning, Appellants' entire car would have been subject to a warrantless search because a weapon or other device contained *anywhere* in the car could have potentially injured an officer moving the car. In effect, the Opinion Announcing the Judgment automatically subjects entire vehicles to warrantless searches if the police invoke police danger as an exigency, regardless of the object of their search.

By its decision today, the Opinion Announcing the Judgment has authorized warrantless searches based merely on the potential for danger to the police, and in doing so, essentially abandons the requirement of exigency. The lead opinion has, in effect, created an exception that swallows the rule. Although truly exigent circumstances demand immediate action,

lead opinion today. Although the defendants in *Gelineau* were handcuffed and taken away from their car following a traffic stop, the Commonwealth argued that the dangerous circumstances surrounding the location of the traffic stop and the possibility that weapons might have been in the vehicle constituted exigent circumstances. In rejecting the Commonwealth's arguments, the court stated that the circumstances surrounding the stop of the vehicle "did not create such an exigency as to justify an immediate warrantless search" of the defendants' car. *Id.* at 192. The court explained that there was nothing in the record to indicate that there were any exigent circumstances, including danger to the police or the public, which would justify a warrantless search. *Id.* at 194. The court also noted that nothing occurred to give the officers reason to fear for their safety since both defendants were handcuffed and under the control of the police. *Id.* Thus, even though the court concluded that probable cause existed for the search, the search was rendered unreasonable because the police failed to get a warrant when they clearly had the opportunity to obtain one prior to searching the car. *Id.*

there was, as noted above, no exigency in the instant case and therefore, no need for an immediate search of Appellants' car. Common sense dictates that the police would have been in no greater danger had they simply secured the scene and procured a warrant before searching the car.[4]

At the same time, by upholding the warrantless search of Appellants' car, the Opinion Announcing the Judgment allows police virtually unfettered discretion to invoke the mantra of "police danger" as a pretext to searching vehicles without a warrant. There can be no question that the police officers of this Commonwealth often face dangerous situations. However, bestowing police with unfettered discretion to conduct warrantless searches upon the mere assertion of danger simply does not reconcile with either the protections afforded by our state constitution or this Court's precedent.[5] I dissent.[6]

Chief Justice ZAPPALA joins in this dissenting opinion.

4. In *Commonwealth v. Stroud*, 699 A.2d 1305, 1311 (Pa.Super.1997), the Superior Court found that the police were required to secure the scene and obtain a search warrant for a vehicle before conducting a search. As in the instant case, the police in *Stroud* conducted a warrantless search of the defendant's vehicle even though the defendant was in custody and his car was under the control of the police. *Id.* at 1307, 1311. The Superior Court rejected the Commonwealth's argument of exigent circumstances and concluded that the warrantless search was unconstitutional. *Id.* at 1310–11. While the court stated that it was aware of the limited resources should the police be required to stand guard over a vehicle while a warrant is secured, it interpreted case law as compelling such actions in the interest of protecting the privacy interests of the individual. *Id.* at 1311.

5. Although the Opinion Announcing the Judgment attempts to limit its decision to the "unique facts of the case," in reality, it unjustifiably expands the scope of exigent circumstances. The result is an increase of enforcement powers at the expense of fundamental rights and personal freedoms.

6. By affirming the Superior Court while expressing no opinion as to the "public safety" exception to the warrant requirement as analyzed by the Superior Court, the Opinion Announcing the Judgment lets that part of the decision stand as precedent at the intermediate appellate level. Although the lead opinion states that the public safety exception was an "alternative" theory of the Commonwealth, the Superior Court's opinion was actually based in large part on its conclusion that danger to the public created exigent circumstances justifying the warrantless search

of Appellants' car. *See Commonwealth v. Stewart,* 740 A.2d 712, 718–19 (Pa.Super.1999).

The Commonwealth justified the warrantless search of Appellants' car in part by claiming that Appellants may have thrown a gun out of the car and, to protect the public, the police needed to determine the location of the gun. By not responding to this proffer, the Opinion Announcing the Judgment allows the Commonwealth to have it both ways exigent circumstances existed because the gun might have been in the car and exigent circumstances existed because the gun *might not* have been in the car. In ordering the search, Lieutenant McDevitt testified that "public safety was the most important factor for me." N.T., 3/10/98, at 264. He also testified that "[t]he only thing that prevented me [from staying with the vehicle while a search warrant was obtained] was my fear that someone would wander on that gun, if it was laying in the street." *Id.* Thus, in rendering its decision today, the lead opinion fails to address the testimony upon which the trial court relied in granting Appellants' suppression motion and upon which the Superior Court below based a significant portion of its opinion.