J-S25010-24

2024 PA Super 204

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS ANDRES CAMACHO | : | |
| | : | |
| Appellant | : | No. 62 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000458-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and BECK, J.

OPINION BY DUBOW, J.: **FILED SEPTEMBER 10, 2024**

Carlos Camacho ("Appellant") appeals from the judgment of sentence of 4½ to 10 years' incarceration imposed after the court found him guilty of one count each of Persons Not To Possess Firearms, Firearms Not To Be Carried Without A License, Resisting Arrest or Other Law Enforcement, Simple Assault, Recklessly Endangering Another Person, Possession of a Small Amount of Marijuana for Personal Use, Use or Possession of Drug Paraphernalia, Driving While Operating Privilege is Suspended or Revoked, Driving Within Single Lane, Turning Movements and Required Signals, and Careless Driving.[1] He challenges the denial of his motion to suppress, asserting that the warrantless search of his vehicle was not supported by exigent circumstances. After careful review, we reverse the order denying

_____

[1] 18 Pa.C.S. §§6105(a)(1), 6106(a)(1), 5104, 2701(a)(1), and 2705; 35 P.S. §§ 780-113(a)(31) and 780-113(a)(32); and 75 Pa.C.S. §§ 1543(a), 3309(1), 3334(a), and 3714(a), respectively.

suppression, vacate the judgment of sentence, and remand for further proceedings.

**A.**

We glean the following relevant background from the certified record, including the audio/videotape recorded by the police vehicle's dash camera. On October 9, 2020, Pennsylvania State Troopers Steven Gentile and Richard Sentak were patrolling on Route 13 in Bucks County when they observed Appellant driving erratically, including by driving along the right shoulder for an extended period of time, straddling the center line, and nearly colliding with another vehicle as he pulled onto Route 63-Woodhaven Road. The troopers turned on their vehicle's overhead lights to signal Appellant to pull over. Appellant continued to drive for two- to three-tenths of a mile during which time the troopers observed him moving within the car and hunching over at one point.

After Appellant pulled his vehicle onto the shoulder, Trooper Gentile approached the driver's side of the vehicle and noticed the smell of alcohol and marijuana. He asked Appellant for his driver's license, and Appellant told him he did not have one. At the same time, Trooper Sentak approached the passenger side where Appellant's girlfriend, Rasheeda Clark, was sitting in the front seat. Trooper Sentak noticed through the passenger window that Appellant had an empty firearm holster attached to his ankle. When Trooper Gentile asked Appellant if there were any weapons in the vehicle, Appellant

replied that there were none. Trooper Gentile directed Appellant to exit the vehicle, and he complied while Trooper Sentak remained outside the passenger side of the car. Trooper Gentile conducted a pat-down search and felt a small tubular object in Appellant's pocket. When Trooper Gentile asked what it was, Appellant pulled it out of his pocket and said it was marijuana. During the pat-down, Trooper Gentile also found the empty ankle holster strapped to Appellant's leg and asked where the gun was. Appellant said, "there is no gun." N.T. Suppression, 8/27/21, at 23.

At that point, Trooper Gentile told Appellant that he was detaining him for marijuana possession. When the troopers began to pull Appellant's arm behind his back to handcuff him, Appellant struggled and grabbed onto the open car door. Trooper Gentile then pulled Appellant backwards out of the car and onto the ground, and both troopers rolled on the ground to the front of the car where Appellant tried to get away. At the same time, Trooper Gentile yelled at Ms. Clark to keep her hands visible, and she complied. An off-duty police officer passing by noticed the scuffle and pulled over to assist. After several minutes, the three officers were able to put two sets of handcuffs on Appellant, and Trooper Sentak relayed into the radio that they had "one detained." Suppression Hr'g-Video CD, Ex. CS 1, at 9:28.

Trooper Sentak and the off-duty police officer detained Appellant on the ground, and other police officers and state troopers arrived on the scene. Trooper Gentile went to the passenger side, instructed Ms. Clark to get out of

the vehicle, told her she was being detained, put handcuffs on her, and placed her in the back of the troopers' vehicle.

While Appellant remained handcuffed on the ground surrounded by at least three police officers, Trooper Gentile searched under and around the driver's seat and recovered a firearm with a loaded magazine. The officers put Appellant into a Bensalem Police vehicle, and Trooper Gentile continued his search of the car, joined by other troopers. At one point, there were a total of eight officers at the scene. *See, e.g.,* Ex. CS 1 at 26:47. When Trooper Gentile was finishing up the search, one of the troopers asked if a tow truck was coming, to which Trooper Gentile replied, "Yeah," and then said to the trooper, "Let us know when the tow comes." *Id*. at 26:07, 28:09. Trooper Gentile and the Bensalem Police Officers then transported Appellant and Ms. Clark to law enforcement headquarters.

**B.**

The Commonwealth charged Appellant with the above offenses. Appellant filed an Omnibus Pre-Trial Motion to Suppress claiming, *inter alia*, that Trooper Gentile did not prove the existence of exigent circumstances to justify the warrantless search of his vehicle. The court held a hearing on August 27, 2021, where both Trooper Gentile and Trooper Sentak testified. Trooper Gentile testified that even after Appellant was handcuffed, he "was still trying to get up and pull away from officers that were holding him." N.T. Suppression at 29. When asked about the option of having the vehicle towed

- 4 -

to obtain a warrant before a search could be conducted, Trooper Gentile testified that Appellant's empty holster suggested the presence of a firearm within the vehicle, which could "accidentally discharge causing potential injury to anyone." *Id*. at 31. Trooper Gentile testified that he rejected the alternative of waiting with the vehicle while another trooper secured a warrant, stating: "that couldn't be feasible because it would be a handcuffed individual in a vehicle with a suspected firearm on the side of a main road." *Id*. at 31-32. The court denied Appellant's Motion to Suppress.

Appellant proceeded to a bench trial on September 1, 2021, after which the court found him guilty of each charge. The court imposed an aggregate sentence of 4½ to 10 years' incarceration, 7 years of probation to run concurrently with the incarceration, and one year of probation to run consecutive to the term of incarceration.

Following the reinstatement of his appellate rights, Appellant filed this timely appeal on December 22, 2023. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

## C.

Appellant presents the following issue for this Court's review:

Did the lower court err in denying the pre-trial motion to suppress, when it found that exigent circumstances existed for the search of [Appellant's] vehicle?

Appellant's Br. at 3.

**D.**

Appellant argues that the search of his vehicle was not supported by exigent circumstances and, therefore, the court erred in denying his motion to suppress. Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010). We may only review "the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Harlan***, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted). This Court is bound by the suppression court's factual findings that are supported by the record, but we are not bound by its legal conclusions, which we review *de novo*. ***Commonwealth v. Briggs***, 12 A.3d 291, 320-21 (Pa. 2011).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures. This protection requires police to obtain a warrant from a neutral and detached magistrate before conducting a search,

unless an exception applies. *Commonwealth v. Perry*, 798 A.2d 697, 699-700 (Pa. 2002) (OAJC); *see also Commonwealth v. Livingstone*, 174 A.3d 609, 625 (Pa. 2017) (observing that "a search without a warrant may be proper where an exception applies and the police have probable cause to believe a crime has been or is being committed.") (citation omitted)). In December 2020, the Supreme Court overruled prior precedent, rejected the federal automobile exception, and reasserted that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. 2020).[2] Under *Alexander*, "[o]btaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was **not** reasonably practicable." *Commonwealth v. Alexander*, 243 A.3d 177, 208 (Pa. 2020) (emphasis in original).

The Supreme Court has identified several types of exigent circumstances, including situations "where the police must search in order to

---

[2] Although the search in the instant case occurred two months prior to *Alexander*, because Appellant preserved the issue of exigent circumstances at "all stages of adjudication up to and including the direct appeal[,]" *Alexander* is applicable. *Commonwealth v. Tilley*, 780 A.2d 649, 652 (Pa. 2001) (citation omitted).

avoid danger to themselves or others[,]" such as "where police had reason to believe that explosives were present in the vehicle." **Perry**, 798 A.2d at 701 (citation omitted).

In **Perry**, the Supreme Court agreed with this Court that exigent circumstances justified the warrantless search of a vehicle. There, a witness informed a police officer that individuals in a white Lexus had shot at him and his passenger in his car moments earlier. Shortly thereafter, police officers spotted the Lexus and a pursuit ensued. Police officers ultimately stopped the vehicle in the middle of a street. Without directing the driver to turn the engine off, police officers asked the suspects to step out of the car. The officers frisked them and found no weapons. Within 15 minutes, a police officer brought the witness to the stopped vehicle who, after seeing the suspects, proclaimed, "that's them and they have two guns." **Perry**, 798 A.2d at 698. The officers handcuffed the suspects and placed them in a police vehicle. The witness informed police that at least one of the guns appeared to be an automatic weapon. After the police lieutenant arrived at the scene and heard the witness's statement, he directed the police officers to search the vehicle. Officers recovered two firearms from under the car mats. The vehicle was then towed and no further search of the vehicle occurred.

In affirming this Court's determination that the warrantless search was justified, a majority of the Supreme Court agreed that the totality of the circumstances, including that the car was left running in the middle of the

- 8 -

street and the "fragile" nature of the purported automatic weapon that posed "an immediate threat to any officer who attempted to move the vehicle," supported the warrantless search. ***Id***. at 703. ***See also id***. at 706 (Castille, J., *concurring*); ***id***. at 719 (Saylor, J., *concurring)*.

In ***Commonwealth v. Gelineau***, 696 A.2d 188, 191, 194 (Pa. Super. 1997), this Court affirmed the grant of a suppression motion where, at the time of the vehicle search, there were no "exigent circumstances, such as danger to the police or the public," because "the vehicle was in the control of the officers," the passengers were handcuffed and had not resisted arrest, and the evidence under the hood of the car "could not have been destroyed while one of the three officers on the scene obtained a search warrant." ***Id***.

**E.**

In the case now before us, the suppression court concluded that the search of the vehicle "was supported by probable cause and exigent circumstances existed." Trial Ct. Op., 1/23/24, at 9. The court observed that whether the vehicle remained on the side of the road or was towed, the need to protect the public and police officers from a firearm provided an exception to the warrant requirement. ***Id***. at 11. In support, the court noted that the traffic stop was valid and the totality of the circumstances provided the officers with probable cause that criminal activity was afoot, specifically because Appellant failed to immediately pull over when signaled, hunched over the driver's seat prior to and after stopping the vehicle, had an empty gun holster

strapped to his ankle, tried to get back in the car after Trooper Gentile told him he was detaining him, and then continued to resist arrest and try to get away, even when he was on the ground and handcuffed. Finally, the court credited Trooper Gentile's testimony that there was "no plausible way to maintain the vehicle until a warrant could be obtained." *Id*.

Appellant contends that the Court erred by denying his motion to suppress because "[t]he representations of Trooper Gentile explaining why he searched the car without waiting for a warrant and without knowing the basis for his assertions are insufficient to demonstrate the existence of exigent circumstances for searching [Appellant's] vehicle." Appellant's Br. at 15.

After reviewing the evidence presented at the suppression hearing, including the videotape, we conclude that the exigent circumstances in the form of danger to the police or public was no longer an issue at the time Trooper Gentile conducted the warrantless search. The vehicle was parked on the right side of a very wide shoulder. Neither Appellant—who was on the ground in two sets of handcuffs and surrounded by three officers—nor Ms. Clark—who was handcuffed in the back of the troopers' vehicle—could have accessed the vehicle. The fact that Appellant resisted arrest at some point is not relevant to whether **at the time of the search** the police officers or the public were in danger. In fact, the danger had ended when Appellant and Ms. Clark were detained and no longer able to access the vehicle. Thus, as in

***Gelineau***, ***supra***, the need for officer safety no longer provided an exception to the warrant requirement.

In addition, there is no evidence to support the court's conclusion that there was "no plausible way to maintain the vehicle until a warrant could be obtained." Trial Ct. Op., at 11. We disagree for several reasons. First, Appellant's vehicle was parked off the road on a wide shoulder and thus, not interfering with the flow of traffic. ***See*** Ex. CS 1 at 2:16. Additionally, there were at least six law enforcement officers at the scene and they discussed the towing of Appellant's vehicle. ***See, e.g.,*** Ex. CS 1 at 26:07, 26:47, and 28:09. Thus, there was sufficient personnel to wait with the vehicle while officers obtained a search warrant.

Accordingly, we reverse the suppression court's order, vacate Appellant's judgment of sentence, and remand to the trial court for further proceedings.

Suppression order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/10/2024

- 11 -