J-S42028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                      :  PENNSYLVANIA
                                                      :

                v.  :

                                                     :

VICTOR NIEVES-CRESPO  :
                                                     :

          Appellant  :  No. 784 MDA 2025

Appeal from the PCRA Order Entered May 9, 2025
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0001337-2020

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:  **FILED: APRIL 10, 2026**

Appellant, Victor Nieves-Crespo, appeals from the order entered in the Lackawanna County Court of Common Pleas, which denied his petition filed under the Post Conviction Relief Act ("PCRA").[1]  After careful review, we reverse the order, vacate Appellant's judgment of sentence, and remand for a new trial.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with possession of a controlled substance with intent to distribute ("PWID"), possession of a firearm prohibited, and firearms not to be carried without a license.  Attorney Robert Saurman entered his appearance on Appellant's behalf.  On August 13, 2020, the court held a preliminary hearing.  Officer Stacey Karabin testified that she

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

works as a patrol officer for the Dickson City Police Department. On July 3, 2020, she responded to a 911 report that a Hispanic man wearing a tank top and shorts pointed a gun at another man. Officer Karabin did not know the identity of the individual who reported the incident. As she was on route to the location, she learned that the man who had pointed the gun left the scene in a vehicle. A description of the male, the vehicle, and the vehicle's license plate was transmitted to neighboring police departments. The vehicle was located by officers from the Blakely Borough Police Department. Appellant was the driver of the vehicle. The officers initiated a felony traffic stop, during which they ordered Appellant out of the car and secured him in handcuffs. Officer Karabin arrived on the scene and Appellant was placed in Officer Karabin's patrol vehicle. Officer Karabin cleared Appellant's vehicle to ensure that there were no other occupants. Thereafter, the vehicle was searched. The officers recovered a firearm from under the driver's seat and narcotics from the middle console of the vehicle. During cross examination, Officer Karabin stated that the Blakely Borough officers wore body cameras which likely had footage of the incident.

On October 2, 2020, Appellant filed an omnibus pretrial motion seeking to suppress the firearm and narcotics recovered. Appellant based his suppression motion on the grounds that the officers that pulled over Appellant's vehicle did not have an adequate basis to stop Appellant because they pulled him over based on an uncorroborated, anonymous tip. The court held a suppression hearing on December 11, 2020. At the beginning of the

- 2 -

hearing, Attorney Saurman affirmed to the court that he had received all outstanding discovery from the Commonwealth and did not have any additional claims to add to the omnibus motion after reviewing the discovery.

Officer Anthony Mercado testified that he works as a patrol officer for the Blakely Borough Police Department. On July 3, 2020, he responded to a report from the communication center that a Hispanic male had pointed a gun at another individual and left the scene in a vehicle which was seen heading towards Blakely Borough. The report further specified that the vehicle was a gold GMC Acadia and provided its license plate number. As the report was coming in, Officer Mercado saw a vehicle matching the description and the license plate number and initiated a traffic stop. After the vehicle stopped, Officer Mercado partially exited his patrol vehicle and ordered Appellant to exit the GMC Acadia. Appellant initially complied but then disregarded Officer Mercado's commands and turned back towards the vehicle. Appellant bent at the hips and reached one hand back in the vehicle towards the bottom of the driver's seat. Officer Mercado shouted further commands, ordering Appellant away from the vehicle. At this point, other officers arrived on the scene and Appellant began complying with Officer Mercado's commands. Appellant got on the ground and was taken into custody. Officer Mercado cleared the vehicle to ensure that there were no other occupants but did not participate in the search of the vehicle. During cross examination, Officer Mercado confirmed that he was wearing a body camera and there was video footage of this interaction.

Officer Michael Shaheen testified that he works as a patrol officer for the Blakely Borough Police Department. He also responded to the same report from the communication center regarding the GMC Acadia. He then heard Officer Mercado reporting that he had located the vehicle and was initiating a traffic stop. Officer Shaheen went to the location that Officer Mercado reported. When Officer Shaheen arrived, Appellant was reaching back into the car and Officer Mercado was yelling commands at Appellant. Appellant subsequently complied. Officer Shaheen handcuffed Appellant and patted him down for weapons. Appellant matched the description of the perpetrator. Officer Shaheen asked Appellant where the gun was and Appellant responded that it was in the car. Officer Shaheen turned Appellant over into the custody of the Dickson City police officers. After Appellant was secured, another officer obtained a written statement from the individual who initially provided the 911 report.

Officer Shaheen approached the vehicle and searched the area near the driver's seat. He recovered a firearm, which was inside a box under the driver's seat. Officer Shaheen pulled the firearm out and ran the serial number of the firearm. While he was waiting for that information, Officer Shaheen went back into the vehicle and searched for "further information on the gun, maybe ownership, other magazines, ammunition." (N.T. Omnibus Motion Hearing, 12/11/20, at 18). During this search, Officer Shaheen located a bag of suspected narcotics in the center console of the vehicle. When asked why Officer Shaheen searched the vehicle himself rather than waiting for a Dickson

City officer to do so, Officer Shaheen stated that safety was his primary concern. When asked why there was a safety concern when Appellant was in custody, handcuffed, and under officer supervision, Officer Shaheen responded:

> There was a large crowd. People were watching. It was for our safety. It was for everyone's safety in the area. Again, that's our number one priority. I don't want anyone to get hurt so that's what was done.

(*Id.* at 21). Officer Shaheen further stated that after he located the firearm, he continued to search the vehicle because he "wanted to make sure that no other ammunition or magazines or possibly even ownership of a gun at that point was located at that point to further [his] investigation because [he] had found the gun." (*Id.* at 22). Officer Shaheen also confirmed that he was wearing a body camera and there was video footage of this incident.

Prior to argument, Attorney Saurman asked the court for leave to file a supplemental brief to raise an additional issue regarding the legality of the search of Appellant's vehicle conducted by an out-of-jurisdiction police officer. The court granted Attorney Saurman permission to do so and deferred its ruling on the motion. On December 22, 2020, our Supreme Court decided *Commonwealth v. Alexander*, 664 Pa. 145, 243 A.3d 177 (2020). In *Alexander*, our Supreme Court overruled prior precedent and held that warrantless vehicle searches must be justified by both probable cause and

exigent circumstances.[2]

On January 4, 2021, Attorney Saurman filed a supplemental brief arguing that the firearm and narcotics recovered from Appellant's vehicle should be suppressed because the search was illegally conducted by an out-of-jurisdiction police officer. As part of this argument, Attorney Saurman insisted that there were no exigent circumstances present in this case that required an officer from another jurisdiction to search Appellant's vehicle. (*See* Supplemental Brief in Support of Appellant's Omnibus Pretrial Motions, filed 1/4/21, at 5) (unpaginated). Specifically, Attorney Saurman argued that there was no exigency because "no one was in or near the car and the police had the scene fully under control." (*Id.*) Attorney Saurman further claimed that "even after finding and removing the firearm which Officer Shaheen indicated had caused him concerns for safety, he went back for a second search." (*Id.*) Attorney Saurman did not cite or raise an argument based on the holding in *Alexander*. On January 8, 2021, the court denied Appellant's omnibus pretrial motion.

Following a jury trial, Appellant was convicted of all charges. On October 1, 2021, the court sentenced Appellant to an aggregate of 84 to 168 months'

---

[2] *Alexander* overruled *Commonwealth v. Gary*, 625 Pa. 183, 91 A.3d 102 (2014) (plurality opinion announcing judgment of court), which held that probable cause alone justified a warrantless vehicle search, without any additional requirement for exigent circumstances. In addressing the applicability of *Alexander*, this Court has explained that although *Alexander* announced a new rule, it would apply retroactively if the defendant preserved the issue at all stages of adjudication. *See Commonwealth v. Grooms*, 247 A.3d 31, 37 n.8 (Pa.Super. 2021).

incarceration. This Court affirmed Appellant's judgment of sentence on May 17, 2024. *See Commonwealth v. Nieves-Crespo*, No. 980 MDA 2023 (Pa.Super. filed May 17, 2024) (unpublished memorandum). On June 13, 2024, Appellant filed a timely PCRA petition, alleging that Attorney Saurman provided ineffective assistance of counsel. Specifically, Appellant asserted, *inter alia*, that Attorney Saurman was ineffective for failing to cite to and rely on *Alexander*.

The PCRA court conducted an evidentiary hearing on February 20, 2025. Attorney Saurman testified that sometime prior to Appellant's trial, Appellant brought up *Alexander* to Attorney Saurman and Attorney Saurman had a conversation with Appellant about the case. Attorney Saurman stated that he did not raise *Alexander* in Appellant's case because his understanding of the holding in *Alexander* was that "the smell of marijuana in and of itself is no longer appropriate to be probable cause for a vehicle search." (N.T. PCRA Hearing, 2/20/25, at 6). Attorney Saurman did not believe that *Alexander* applied to Appellant's case because he thought that there was sufficient probable cause to justify the search of Appellant's vehicle. Attorney Saurman affirmed that if he discovered an additional suppression issue after he had already litigated an omnibus pretrial motion, he would typically raise it before the court. Attorney Saurman further confirmed that he received the officers' body camera footage as part of discovery and had reviewed its full contents.

During cross examination, Attorney Saurman stated that it was not a point of dispute that there were many onlookers at the scene when Appellant's

- 7 -

vehicle was searched. During redirect examination, Attorney Saurman acknowledged that the body camera footage would be a better representation of the scene than his memory of the facts of this case. He stated that he argued to the court that the gun was not a risk to anyone unless there was concern that the onlookers would rush the car. The trial court rejected this argument. Attorney Saurman further explained:

> I raised the exigent circumstances issue. If that had succeeded, I then imagined I would have pursued **Alexander** at that point if that makes sense? But at that point, the exigent circumstances overwhelmed **Alexander**, so as long as the court was accepting that, there was no reason to even raise it.

(N.T. PCRA Hearing at 17-18).

Appellant testified that he learned of the **Alexander** decision from another prisoner shortly after it came out. He informed Attorney Saurman about the case immediately thereafter, in December of 2020.

Officer Shaheen's body camera footage was admitted as Exhibit D, pursuant to the stipulation of all parties.[3] The footage commences as Officer Shaheen exits his patrol vehicle immediately after he arrives on the scene. (**See** PCRA Hearing Exhibit D at 0:00-0:06). Two other police vehicles and four other police officers are already present at the scene when Officer Shaheen arrives. The four other officers have their guns drawn and are issuing commands to Appellant. (**Id.**) Appellant is on the ground a few feet behind

---

[3] Officer Shaheen's body camera footage was also played for the jury at Appellant's trial. (**See** N.T. Trial, 4/20/21, at 56-57).

his vehicle, on his stomach with his hands behind his back, generally complying with the officers' commands. (*Id.*) As Officer Shaheen walks closer to Appellant, the residential street on which the incident is occurring is largely visible. There is no one present on the street other than Appellant and the officers. (*Id.*)

Officer Shaheen walks past the other officers to where Appellant is lying on the ground and begins to handcuff Appellant. (*Id.* at 0:07-0:13). As he is doing so, Officer Shaheen asks Appellant if anyone else is in Appellant's car. Appellant says no and Officer Shaheen instructs another officer to clear the car. (*Id.* at 0:14-0:17). Officer Shaheen asks Appellant, "Where's the gun?" Appellant initially states that the gun belongs to his friend. When Officer Shaheen inquires again, Appellant tells him that the gun is in the car, under the seat. (*Id.* at 0:20-0:29). Officer Shaheen frisks Appellant while he is still lying on the ground. (*Id.* at 0:30-47).

As Officer Shaheen turns towards his car and back, most of the street is visible on the footage. There are five police vehicles and ten police officers present at the scene. The police vehicles are largely blocking the entrance to the street at the intersection, and no other individuals are present on the street other than Appellant and the officers. (*Id.* at 0:48-1:04). Appellant is sitting on the ground a few feet behind his car, handcuffed and under the supervision of four officers who are standing around him. (*Id.* at 1:04-1:06).

Officer Shaheen walks towards Appellant's vehicle, which is parked on the side of the road. (*Id.* 1:04-1:13). Officer Shaheen begins searching the

driver's side of the vehicle as a female officer searches the passenger side of the vehicle. (*Id.* at 1:13-1:23). Officer Shaheen pulls out a black box from under the driver's seat and places it on the hood of the vehicle. (*Id.* at 1:26-1:38). As Officer Shaheen places the black box on the hood and turns, most of the street is visible. There are still no individuals visible on the street other than Appellant and the officers. (*Id.* at 1:33-1:39). As Officer Shaheen puts on gloves, Appellant can be seen in the background being led away by an officer towards the intersection where the police vehicles are parked. (*Id.* at 1:40-1:48). Officer Shaheen opens the black box, finds a firearm and ensures that it is unloaded. (*Id.* at 2:03-2:15). Officer Shaheen radios in the serial number of the firearm and talks briefly with the other officers on the scene. As Officer Shaheen is doing so, the female officer can be seen continuing to search the vehicle, including the back seats of the vehicle. No individuals other than the officers are visible on the street during this time. (*Id.* at 2:16-3:46).

Officer Shaheen leans back into the car, opens and closes the center console, and exits the vehicle. (*Id.* at 3:47-4:14). As Officer Shaheen is standing on the street talking to another officer, one individual can be seen in the background exiting his residence and standing on the porch. The individual is separated from Appellant's vehicle by two fences and does not move any closer to the scene. (*Id.* at 4:27-4:38). The female officer calls Officer Shaheen to the trunk of the vehicle after she opens it. (*Id.* 4:40-4:44). She tells Officer Shaheen that she thinks the vehicle is a drug car

because there is "shake all over the place." (*Id.* 4:45-4:53). Officer Shaheen and the female officer proceed to search the trunk. (*Id.* 4:53-5:20). Officer Shaheen walks back towards the front of the vehicle. No individuals other than the officers are visible on the street. Officer Shaheen and the female officer search the inside of the vehicle again, including the back seats. (*Id.* 5:50-6:56). Officer Shaheen lifts a compartment of the center console and finds a plastic bag with a white substance inside it. (*Id.* at 6:57-7:17).

On May 9, 2025, the PCRA court denied Appellant's PCRA petition. Appellant timely filed a notice of appeal on June 5, 2025. That same day, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on June 6, 2025.

Appellant raises the following issues for our review:

> Whether trial counsel was ineffective for failing to litigate a motion to suppress evidence based upon [*Alexander*], which was decided prior to [Appellant's] trial and while the omnibus pretrial motions were pending in this case?

> Whether trial counsel was ineffective for failing to object to a docket sheet being entered into evidence rather than the court documents filed on the docket to demonstrate that a conviction previously occurred to convict [Appellant] under 18 Pa.C.S. § 6105(a)(1)?

> Whether trial counsel was ineffective for failing to object to the prosecutor personally vouching for the credibility of a witness during closing arguments?

(Appellant's Brief at 4).

In his first issue, Appellant asserts that Attorney Saurman provided

- 11 -

ineffective assistance by failing to raise *Alexander* before the trial court. Appellant argues that if Attorney Saurman had relied on *Alexander* and argued that the warrantless search of Appellant's vehicle was not justified by exigent circumstances, the firearm and narcotics recovered from his vehicle would have been suppressed. Appellant claims that the PCRA court erred in concluding that there was no arguable merit to Appellant's claim because there were exigent circumstances to justify the warrantless search. Specifically, Appellant insists that there was no exigency because at the time that Appellant's vehicle was searched, Appellant was away from the vehicle, handcuffed, and under officer supervision. Appellant further asserts that the record belies the court's finding that exigency existed because there was large crowd of onlookers at the scene. Appellant contends that Officer Shaheen's body camera footage clearly shows that there were no other individuals around the vehicle and the scene was secured by numerous police officers at the time of the search. Further, Appellant argues that Attorney Saurman did not have a reasonable strategic basis for failing to raise *Alexander* before the trial court because Attorney Saurman's testimony demonstrates that he misinterpreted the holding in *Alexander*.

Additionally, Appellant asserts that the PCRA court erred in finding that Appellant was not prejudiced because the search would have otherwise been justified as a protective sweep of the vehicle for weapons. Appellant claims that a protective sweep is justified only if the officers reasonably believed that

the suspect may gain immediate control of a weapon. Appellant argues that there was no risk that Appellant would escape and gain control of a weapon in the vehicle because Appellant was handcuffed, supervised by numerous police officers, and locked in a police vehicle at the time that his vehicle was searched. Appellant also claims that there is no evidence in the record that Appellant would have been permitted to return to the vehicle if a protective sweep of the vehicle did not reveal any weapons. Further, Appellant avers that the search of Appellant's vehicle falls well outside the scope of a protective sweep because the officers searched the backseat and trunk of his vehicle. Appellant concludes that the PCRA court erred in denying relief because Appellant established the arguable merit, reasonable basis and prejudice prongs with respect to his ineffective assistance of counsel claim. We agree.

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, 672 Pa. 30, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations,

we are bound by them if they are supported by the record. ***Commonwealth v. Mojica***, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***,

852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3,

- 15 -

33, 807 A.2d 872, 883 (2002)).

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa.Super. 2021) (*en banc*) (quoting *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa.Super. 2017)). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012)). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and ... the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Alexander, supra* at 151, 243 A.3d at 181. "Obtaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was not reasonably practicable." *Id.* at 197, 243 A.3d at 208.

"Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." *Commonwealth v. Rosario*, 350 A.3d 243, 250 (Pa.Super. 2025) (quoting *Commonwealth v. Griffin*, 24 A.3d 1037, 1042-43 (Pa.Super. 2011), *appeal denied*, 613 Pa. 650, 34 A.3d 82 (2011)). "[W]here

there is potential danger to police or others in the context of a vehicle stop, exigency has been established for purposes of a warrantless search." ***Commonwealth v. Hernandez***, 594 Pa. 319, 332, 935 A.2d 1275, 1282 (2007). Nevertheless, "[t]he fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient. Rather, police must be able to articulate the danger posed under the specific circumstances of the case." ***Id.***

In ***Commonwealth v. Perry***, 568 Pa. 499, 798 A.2d 697 (2002) (opinion announcing judgment of the Court), our Supreme Court evaluated whether exigent circumstances justified a warrantless search of a vehicle. While looking for suspects involved in a drive by shooting, officers stopped Mr. Perry's vehicle. The officers ordered Mr. Perry and his passenger to exit the vehicle. Mr. Perry did not turn the vehicle's engine off before he exited. As such, the vehicle's motor remained running and was blocking two lanes of travel. The officers frisked Mr. Perry and the passenger and did not recover any weapons. Within 15 minutes, the officers brought a witness of the shooting to the scene. The witness identified Mr. Perry and the passenger as the perpetrators and told the officers that they had two guns. The witness further told the officers that at least one of the firearms appeared to be an automatic weapon. Mr. Perry and the passenger were handcuffed and placed in a patrol vehicle. The officers looked inside Mr. Perry's vehicle with a flashlight and saw that the driver's side floor mat was askew. The officers recovered one firearm from under the driver's side floor mat and a second

firearm from under the passenger's side floor mat. Once the weapons were removed, no further search of the vehicle was conducted, and the vehicle was driven by officers to police headquarters.

In deciding whether exigent circumstances were present, the Court held that "when police are faced with a situation that they did not create, which necessitates that they enter an automobile, and they possess specific and articulable facts from which they reasonably believe that there exists a great potential for deadly harm, the police may conduct a limited search of the vehicle to ensure their safety." **Perry, supra** at 509, 798 A.2d at 703. The Court found that exigency existed "based upon the unique facts of the case[.]" *Id.* Specifically, the Court noted:

> [I]t is of critical import that the [vehicle] was in the middle of a lane of traffic with its engine running. This required the police to enter the vehicle to remove it from the right of way and to turn off the vehicle's ignition. Moreover, the police possessed the specific knowledge that a shooting had occurred minutes before which resulted in serious injury. An eyewitness to the crime immediately identified the men in custody as the shooters. Furthermore, the witness stated that there were two weapons involved in the crime and that one of the guns was an automatic weapon. Appellants had been frisked and no weapons were discovered on their person, increasing the likelihood that the guns were in the [vehicle]. The uncontradicted testimony by the police established that the type of weapon alleged to have been used in the crime was fragile and could easily go off if bumped or stepped upon, posing an immediate threat to any officer who attempted to move the vehicle.
>
> Thus, the police were faced with the necessity of entering the vehicle and were armed with specific and articulable facts that established a great potential for deadly harm to the police if the search of the automobile was not conducted.

> Finally, the police engaged in a search limited only to establishing the integrity of the passenger compartment of the vehicle. Indeed, after the weapons were discovered, no further search of the vehicle was conducted. Faced with all of these unique and extreme circumstances, considered in toto, it was not unreasonable for police to have searched the vehicle without a warrant.

*Perry, supra* at 509-10, 798 A.2d at 703 (footnote omitted).

In *Commonwealth v. Camacho*, 325 A.3d 685 (Pa.Super. 2024), police officers initiated a traffic stop of Mr. Camacho's vehicle for driving erratically. Mr. Camacho pulled his vehicle over onto the shoulder. While speaking with Mr. Camacho, the officers noticed an empty gun holster on Mr. Camacho's ankle. The officers ordered Mr. Camacho to exit the vehicle and patted him down for weapons. While patting him down, Mr. Camacho told the officers that he had marijuana in his pocket. The officers told Mr. Camacho that he was being detained for marijuana possession. While the officers were in the process of handcuffing Mr. Camacho, he struggled and grabbed hold of the open car door. The officers pulled Mr. Camacho onto the ground and handcuffed him. Other officers arrived at this time, resulting in a total of eight officers at the scene. Mr. Camacho was on the ground, handcuffed, and surrounded by at least three officers. The passenger in Mr. Camcho's vehicle was also handcuffed and placed in the back of a patrol vehicle. The officers searched around the driver's side of Mr. Camacho's vehicle and recovered a firearm. The officers placed Mr. Camacho in a patrol vehicle and continued to search Mr. Camacho's vehicle.

In holding that exigent circumstances were not present to justify a warrantless search of Mr. Camacho's vehicle, this Court distinguished the facts from **Perry**, noting that Mr. Camacho's vehicle was parked off the road on a wide shoulder, not disturbing the flow of traffic. This Court found it significant that there were multiple officers on the scene, and as such, there was sufficient personnel to secure the scene while officers obtained a warrant to search the vehicle. This Court further noted:

> The fact that [Mr. Camacho] resisted arrest at some point is not relevant to whether **at the time of the search** the police officers or the public were in danger. In fact, the danger had ended when [Mr. Camacho and the passenger] were detained and no longer able to access the vehicle. Thus, … the need for officer safety no longer provided an exception to the warrant requirement.

**Camacho, supra** at 691 (emphasis in original).

Instantly, the PCRA court found that Appellant's claim lacked arguable merit because exigent circumstances existed to justify the warrantless search of Appellant's vehicle. In so holding, the PCRA court found that a search of Appellant's vehicle was necessary to ensure the safety of the officers and others. Specifically, the PCRA court found that even though Appellant was handcuffed and under officer supervision at the time, a search of the vehicle was necessary for safety because the officers had reason to believe a firearm was in the vehicle and a crowd of onlookers had gathered at the scene. In support, the court found that Officer Shaheen had credibly testified that a crowd had gathered at the scene. Nevertheless, the PCRA court does not

address Officer Shaheen's body camera footage, which clearly shows that there were no other individuals present on the street other than Appellant and the officers. As such, the court's credibility determination is not supported by the record, and we are not bound by it. *See Prater, supra*; *Mojica, supra.*

As in *Camacho*, the body camera footage shows that Appellant was handcuffed on the ground with at least four police officers standing around him at the time that the officers began searching Appellant's vehicle. The fact that Appellant initially disregarded Officer Mercado's commands and reached back into the car is irrelevant because Appellant was detained and unable to access the car at the time that the officers conducted the search. There were at least ten officers present on the scene who could have secured the vehicle while a warrant was obtained. The video footage makes clear that there was not a crowd of onlookers present on the street.

Additionally, while the officers had reason to suspect that a firearm was present in the vehicle, none of the additional factors that justified the warrantless search in *Perry* were present here. Appellant's vehicle was parked on the side of the road and was not blocking the flow of traffic. As such, there was no reason for the officers to enter Appellant's vehicle to move it, which might have endangered their lives. The search of the vehicle was also not limited to recovering the weapon. Rather, after the firearm was recovered, the officers continued to search the vehicle. In the video footage, the officers discuss their suspicion that the vehicle was a drug car before

searching the vehicle again, indicating that the officers began searching for narcotics. Viewing the totality of the circumstances in this case, we cannot agree with the PCRA court's conclusion that there were exigent circumstances to justify the warrantless search of Appellant's vehicle. *See Camacho, supra*. *See also Hernandez, supra*. As such, the PCRA court erred in concluding that Appellant's claim lacked arguable merit. *See Parker, supra*; *Smith, supra*.

Regarding the reasonable basis prong,[4] both Appellant and Attorney Saurman testified that Appellant brought *Alexander* to Attorney Saurman's attention prior to Appellant's trial. Attorney Saurman initially testified that he did not believe *Alexander* applied to Appellant's case because he understood *Alexander* to stand for the proposition that the smell of marijuana was insufficient to be probable cause for a vehicle search. Attorney Saurman's assessment was incorrect. As we have already discussed, the holding in *Alexander* that exigency is required to justify a warrantless vehicle search directly implicates the legality of the search of Appellant's vehicle. Attorney Saurman further testified that he did not raise *Alexander* because he raised an argument regarding exigency in the supplemental brief in support of the

_____

[4] The PCRA court did not expressly determine whether Appellant satisfied the reasonable basis prong of the ineffective assistance of counsel test. Nevertheless, Attorney Saurman testified at the evidentiary hearing and explained his reasons for failing to raise *Alexander* before the trial court. As such, the record is sufficient for this Court to review the reasonable basis prong.

omnibus pretrial motion and the trial court rejected the argument. Nevertheless, Attorney Saurman only briefly raised this exigency argument in the context of an entirely different claim that the search of Appellant's vehicle was illegally conducted by an out-of-jurisdiction police officer. Attorney Saurman did not cite to **Alexander** or argue that exigency was required to justify the warrantless search of Appellant's vehicle. As previously discussed, such a claim in the proper context has arguable merit. On this record, we conclude that Attorney Saurman did not have a reasonable strategic basis for failing to raise **Alexander** before the trial court. **See King, supra**.

The PCRA court further found that Appellant was not prejudiced by Attorney Saurman's failure to raise **Alexander** because the search would have otherwise been permitted as a protective sweep. The United States Supreme Court has determined that, under the Fourth Amendment, the police may conduct a limited search of the passenger compartment of a vehicle under the following circumstances:

> Our past cases indicate … that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that **the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden**, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous **and the suspect**

**may gain immediate control of weapons.** [T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3480-81, 77 L.Ed.2d 1202, ___ (1983) (internal citations, footnote, and most quotation marks omitted) (emphasis added). The fact that a suspect is in police custody at the time of the search "would not defeat the validity of a protective search because a suspect might break free from police or be allowed to return to his vehicle after the search is conducted." *Commonwealth v. Rosa*, 734 A.2d 412, 419 (Pa.Super. 1999), *appeal denied*, 561 Pa. 693, 751 A.2d 189 (2000). "Accordingly, '[w]e look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon.'" *Commonwealth v. Watley*, 153 A.3d 1034, 1045 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017) (quoting *Commonwealth v. Tuggles*, 58 A.3d 840, 843 (Pa.Super. 2012)).

Here, the PCRA court found that a protective sweep of Appellant's vehicle was warranted because "the police here had a reasonable suspicion that there was a gun in [Appellant's] car, and for their safety and the safety of the onlookers, they were justified in doing a protective search of the vehicle to look for weapons and ammunition." (PCRA Court Opinion, filed 5/9/25, at 13-14). As previously discussed, the court's finding that there was a crowd of onlookers on the street is unsupported by the record. As such, only the

safety of the officers is at issue here.

The PCRA court did not find it significant that Appellant was handcuffed and under officer supervision when the search was conducted because this Court has previously held that a protective sweep may be justified even when a suspect is in police custody. Nevertheless, this holding has consistently been grounded in the rationale that a protective sweep is necessary for officer safety due to the risk that the suspect may break free of officer control or because the suspect would be permitted to return to the vehicle if the protective sweep did not reveal any weapons. *See, e.g., Tuggles, supra* at 843 (holding that protective sweep was not invalidated by fact that appellant was secured in patrol vehicle at time of search because appellant would have been allowed to return to vehicle at end of investigative detention); *In re O.J.*, 958 A.2d 561 (Pa.Super. 2008), *appeal denied*, 605 Pa. 688, 989 A.2d 918 (2010) (holding protective sweep was justified while appellant was secured in patrol vehicle because officer testified that he did not intend to arrest appellant for traffic violation and appellant would have been permitted to return to vehicle if weapon was not discovered); *Rosa, supra* at 419 (holding protective sweep was justified because there was heightened risk that suspect might break away from police control because there were three men being detained and it was clear that they would have been permitted to return to vehicle if weapons were not discovered).

Here, at the time the officers began searching Appellant's vehicle,

Appellant was handcuffed, on the ground several feet behind his vehicle, and surrounded by at least four police officers. There was a total of at least ten officers at the scene at the time. As such, there was little to no risk that Appellant could have broken free of police control to reach a concealed weapon in his vehicle such that the officers' lives were in danger.

There is also no support in the record to conclude that Appellant would have been permitted to return to his vehicle if the officers did not discover a weapon during their search. When Officer Shaheen was asked why he was concerned about safety even though Appellant was under officer supervision, Officer Shaheen stated only that he was concerned about the numerous bystanders that were at the scene. Nevertheless, as we have already discussed, the body camera footage made clear there were not numerous bystanders on the street at the time the officers began the vehicle search. Further, the facts of this case do not suggest that Appellant would have been permitted to return to his vehicle if a protective sweep yielded no weapons. Appellant was stopped because he was suspected of having pointed a firearm at another individual. Appellant matched the physical description of the perpetrator, and he was driving a vehicle that matched the description and license plate of the vehicle that the perpetrator was reported to be driving. Appellant further admitted that there was a gun in the vehicle as he was being handcuffed. On this record, we cannot say that Appellant would have been permitted to return to the vehicle if the officers' search had not produced a

weapon.

Additionally, the search conducted by the officers was not limited in scope to a protective sweep for weapons. The officers did not limit the search to the passenger compartment or areas where a weapon could have been hidden within reach of where Appellant was sitting. Rather, the officers conducted an extensive search of the entire vehicle, including the back seats and the trunk. The officers further continued their search of the vehicle even after the firearm was recovered even though there was no reason to suspect that more than one firearm was present. Viewing the totality of the circumstances, we cannot agree with the PCRA court that the warrantless search of Appellant's vehicle was justified as a protective sweep for weapons. *See Long, supra*; *Watley, supra*. Had the evidence recovered in the vehicle been suppressed, there is a reasonable probability that the outcome of the proceedings would have been different; as such, the PCRA court erred in determining that Appellant was not prejudiced by Attorney Saurman's failure to raise *Alexander* to seek suppression of evidence in this case. *See Spotz, supra*; *Parker, supra*.

In sum, we conclude that Appellant has satisfied all three prongs of the ineffective assistance of counsel test with respect to his first issue. Thus, Appellant is entitled to PCRA relief in the form of a new trial. *See Commonwealth v. Hunter*, 2026 PA Super 48 (filed Mar. 17, 2026) (holding that appellant was entitled to new trial based on trial counsel's ineffectiveness

in failing to seek suppression of evidence and where appellant established each prong of ineffectiveness test; reversing PCRA court order denying relief, vacating judgment of sentence, and remanding for new trial). Accordingly, we reverse the order denying PCRA relief, vacate the judgment of sentence, and remand for a new trial.[5]

Order reversed. Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2026

---

[5] Based on our disposition, we do not address Appellant's remaining issues on appeal.